HURON VALLEY HOSPITAL, INC., a Michigan nonprofit corporation, Plaintiff-Appellee,

v.

CITY OF PONTIAC, et al., Defendants,

Bailus Walker, Jr.; Maurice S. Reizen, M.D.; Herman A. Ziel, M.D.; Richard Reihmer, Defendants-Appellants.

No. 85–1693.

United States Court of Appeals, Sixth Circuit.

Argued April 8, 1986.

Decided May 30, 1986.

564

Frank J. Kelley, Louis J. Caruso, Marvin L. Bromley, Edwin M. Bladen (argued), William E. Molner, Lansing, Mich., for defendants-appellants.

Ann C. Yahner, Kohn, Milstein, Cohen & Hausfeld, Jerry S. Cohen, Washington, D.C., John P. Morris (argued), Tempe, Ari., for plaintiff-appellee.

Before KEITH and MARTIN, Circuit Judges, and WEICK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Bailus Walker, Jr., Maurice Reizen, Herman Ziel, Jr. and Richard Reihmer, former employees of the Michigan Department of Public Health, attempt to appeal the district court's denial of their motions for summary judgment. 612 F.Supp. 654 (E.D. Mich.1985). They argue that under the authority of *Mitchell v. Forsyth,* — U.S. —, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), they may appeal the district court's denial of summary judgment on the issues of qualified immunity and the state action antitrust exemption before a final judgment is rendered. The defendants further claim that the district court wrongfully deprived them of these immunities. We have jurisdiction to review only the denial of qualified immunity and we affirm the district court's denial of qualified immunity only.

Huron Valley Hospital is a Michigan non-profit corporation that was organized in late 1975 for the purposes of constructing, owning and operating a hospital in Oakland County, Michigan. In 1976, Huron Valley filed an application for a state certificate of need under Michigan Compiled Laws sections 331.451 *et seq.*[1] Huron Valley also filed, as it was required to do, for federal capital expenditure approval under section 1122 of the Social Security Amendments of 1972, 42 U.S.C. § 1320a-1, with the Michigan Department of Public Health and the federally designated regional health systems agency. The Department of Public Health had been designated by the Governor of Michigan to administer the federal section 1122 program under an agreement between Michigan and the Secretary of the United States Department of Health and Human Services.[2] Both applications sought permission to proceed with the construction of a 153 bed acute care hospital in Oakland County which would cost 14.789 million dollars. The applications were complete in February of 1977.

1. Michigan Compiled Laws Sections 331.451 *et seq.* were repealed and replaced by sections 333.22101 *et seq.*, effective September 30, 1978.

2. The certificate of need program and the section 1122 program were created to eliminate unnecessary medical costs. The certificate of need program was designed to insure that new hospitals were not built and existing hospitals did not expand in areas where such facilities were not needed.

The Michigan Department of Public Health denied Huron Valley's certificate of need application. Huron Valley then requested and received a hearing before the Michigan State Health Facilities Commission seeking a reversal of this decision. The Commission affirmed the denial in January, 1980. In the meantime, on June 27, 1977, Pontiac General Hospital, an existing facility, filed a notice of intent to request a certificate of need to build a new hospital. Pontiac General's completed application was approved on August 25, 1978.

Having exhausted all of the Michigan administrative avenues, Huron Valley filed suit in the Oakland County Circuit Court which reversed the Commission on March 27, 1981, and ordered the Department of Public Health to issue a certificate of need to Huron Valley. *Huron Valley Hospital, Inc. v. Michigan State Health Facilities Comm'n*, Civ. Action No. 80–200439–AA (Oakland County Div.Ct. Mar. 27, 1981). The Michigan Court of Appeals affirmed the trial court's findings, holding that the Department of Public Health had based its decision upon unpublished criteria that favored the application of Pontiac General. *Huron Valley Hospital, Inc. v. Michigan State Health Facilities Comm'n*, 110 Mich.App. 236, 312 N.W.2d 422 (1981). The Court of Appeals held that the use of such unpublished criteria was a violation of the statutory limitations on the Department's discretion. 110 Mich.App. at 243–44, 312 N.W.2d 422. As a result, Huron Valley was deprived of an impartial review of its application in violation of its due process rights. 110 Mich.App. at 243–46, 312 N.W.2d 422. The Court ordered the issuance of the certificate of need because the Department's decision was "unsupported by competent, material, and substantial evidence." 110 Mich.App. at 251, 312 N.W.2d 422.

Following the Michigan Supreme Court's denial of the Commission's application for leave to appeal, 413 Mich. 853 (1982), the Department of Public Health issued a certificate of need to Huron Valley but limited its authorized capital expenditure to 14.789 million dollars, the amount requested in the outdated 1976 application. Huron Valley next filed a petition for clarification in the Oakland County Circuit Court and the court ordered the Department to issue a certificate of need in a reasonable amount which would allow construction of the planned facility. *Huron Valley Hospital, Inc. v. Michigan State Health Facilities Comm'n*, Civ. Action No. 80–200439–AA (Oakland County Civ.Ct. Oct. 21, 1982). The Department finally issued a certificate of need to Huron Valley on October 27, 1982, for 44.651 million dollars.

During the same period, Huron Valley was also discussing the federal section 1122 approval with the Michigan Department of Public Health. On February 23, 1983, the Regional Health Administrator issued a section 1122 approval after the Michigan Department of Public Health, after discussions and intervention by the Michigan Attorney General, recommended approval. Shortly thereafter, an Assistant United States Surgeon General vacated the section 1122 approval. More litigation followed in the United States District Court which ordered that the section 1122 approval be reinstated. *Huron Valley Hospital, Inc. v. City of Pontiac*, 585 F.Supp. 1159 (E.D.Mich.1984). Construction finally began on the hospital in 1984.

In addition to the litigation discussed earlier, Huron Valley began the present action in 1978, claiming that numerous defendants conspired to violate the antitrust laws by preventing Huron Valley from entering the Oakland County health care market. In 1979, Huron Valley sought to amend its original complaint to add 42 U.S.C. § 1983 violations and to add the state defendants who are now before us. The district court did not allow the tendered amendment and granted summary judgment in favor of the various defendants. *Huron Valley Hospital, INc. v. City of Pontiac*, 466 F.Supp. 1301 (E.D.Mich.1979). On appeal, we disagreed and vacated the district court judgment, remanding the case for the entry of a stay pending the completion of the state administrative and judicial proceedings. *Huron Valley Hospital, Inc. v. City of*

*Pontiac,* 666 F.2d 1029 (6th Cir.1981). State proceedings were complete in 1982 when the Michigan Supreme Court denied leave to appeal, thus affirming the Oakland County Circuit Court's order that a certificate of need be issued to Huron Valley Hospital.

With the present case thus reactivated, Huron Valley filed an amended complaint in 1983, adding the four defendants who now pursue this appeal. Huron Valley claims that beginning in 1976, the various defendants engaged in a general conspiracy to restrain trade in violation of section one of the Sherman Act and that certain of the defendants, including those before us on appeal, conspired to deprive Huron Valley of its fourteenth amendment due process rights in violation of 42 U.S.C. § 1983.

The defendants moved the district court to dismiss this action and alternatively moved for summary judgment. The court denied the motions on various grounds, finding, among other things, that these defendants could not claim qualified immunity or the state action antitrust exemption.

■ Denials of summary judgment usually may not be appealed immediately because they are not "final decisions of the district courts." 28 U.S.C. § 1291. The requirement of finality means that all claims must be raised in a single appeal after a judgment on the merits. *Richardson-Merrell, Inc. v. Koller,* — U.S. —, 105 S.Ct. 2757, 2760, 86 L.Ed.2d 340 (1985); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981). The Supreme Court has frequently recognized the extraordinary delay and expense which would occur if immediate appeals were allowed from each and every order of the district court. *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 265, 102 S.Ct. 3081, 3082–83, 73 L.Ed.2d 754 (1982).

■ For every rule, however, we generally have found a "narrow exception," *Firestone,* 449 U.S. at 374, 101 S.Ct. at 673, and the same is true for the finality rule of section 1291. We traditionally have not looked upon piecemeal appeals with any degree of favor. *See Solomon v. Aetna Life Ins. Co.,* 782 F.2d 58, 60–61 (6th Cir. 1986) (district court certification under Fed. R.C.P. 54(b), which governs multiple claims or claims involving multiple parties, vacated because no justification for certification given). Yet, the collateral order doctrine has evolved so that a "small class" of prejudgment orders may be appealed immediately. *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). To be appealable, these prejudgment orders must "finally determine claims of right separable from, and collateral to, rights asserted in the action, [and must be] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* The Supreme Court clarified this collateral order doctrine in *Richardson-Merrell, Inc. v. Koller,* — U.S. —, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985), a case holding that attorney disqualification in the civil context is not immediately appealable. "[A]t a minimum," the order must "satisfy three conditions: It must 'conclusively determine the disputed question,' 'resolve an important issue completely separate from the merits of the action,' and 'be effectively unreviewable on appeal from a final judgment.' " *Richardson-Merrell,* — U.S. at —, 105 S.Ct. at 2761 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)).

■ The Supreme Court, in *Mitchell v. Forsyth,* — U.S. —, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), held that the denial of summary judgment on the issue of qualified immunity satisfied these requirements and was appealable immediately, even though no final judgment in the case as a whole has been entered. *Mitchell* interpreted *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982), as recognizing that qualified immunity was an "entitlement" to immunity from suit and the burdens of a trial, not a defense to liability. *Mitchell,* 105 S.Ct. at 2815–16. Earlier, the court

had determined that absolute immunity was an "entitlement" not to be subject to suit and that such an "entitlement" was lost forever if an immediate appeal of its denial was not allowed. *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). The *Mitchell* Court held that because of *Harlow*'s clarifications about the nature of qualified immunity, it was apparent that the "entitlement" of qualified immunity, it was apparent that the "entitlement" of qualified immunity, like the "entitlement" of absolute immunity, would be lost forever if the claiming party was required to go through a trial and thus early review was warranted. *Mitchell*, 105 S.Ct. at 2815–16. The Court then found that the denial of summary judgment on qualified immunity grounds satisfied the other two prongs of the collateral order test because it conclusively determined the issue and that the claim of immunity was "conceptually distinct" from the merits. *Id.* at 2816–17. Like denials of absolute immunity, the Court found that denials of qualified immunity on summary judgment satisfied the collateral order three-part test and were immediately appealable. *Id.* at 2817. *See also Nixon*, 457 U.S. at 743, 102 S.Ct. at 2697–98. As a result of *Mitchell*, we have jurisdiction to consider the propriety of the district court's determination that these defendants were not entitled to qualified immunity.

■ Having resolved that we have jurisdiction to review the qualified immunity issue, we turn now to the attempted appeal of the denial of the state action antitrust exception. The state action antitrust exemption originated with the notion that the Sherman Act did not prohibit a state from restraining competition and did not otherwise hinder a state's ability to regulate commerce within its borders. *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). *See Southern Motor Carriers Rate Conference, Inc. v. United States*, — U.S. ——, 105 S.Ct. 1721, 1726, 85 L.Ed.2d 36 (1985). State regulation of private parties, such as Huron Valley, is not subject to the antitrust laws if the challenged restraint is "clearly articulated and affirmatively expressed as state policy," *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980) (quoting *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978) (opinion by Brennan, J.)), and if the state actively supervises the private anticompetitive conduct. *Midcal*, 445 U.S. at 105, 100 S.Ct. at 943.

■ We believe that a denial by the district court of this defense does not satisfy the three requirements necessary for an appeal under the collateral order doctrine. First, the exemption is not an "entitlement" of the same magnitude as qualified immunity or absolute immunity, but rather is more akin to a defense to the original claim. Further, it is doubtful that the exemption is lost if immediate appeal is denied. Review of the denial on direct appeal after further development of the record certainly affords the necessary protection if the defense is valid. Moreover, the state action antitrust exemption does not satisfy the requirement of the collateral order doctrine that the claim be completely separate from the merits of the original claim. In the case before us, the claim is that the defendants conspired and acted to prevent Huron Valley from entering the appropriate health care market in violation of the Sherman Act. The analysis necessary to determine whether clearly articulated or affirmatively expressed state policy is involved and whether the state actively supervises the anticompetitive conduct overlaps the analysis necessary to determine whether the defendants have violated the rights of Huron Valley. This is not a simple conclusion that the law is clearly established as is necessary with qualified immunity. It is a determination that affirmatively expressed state policy is involved and that the state actively supervises the anticompetitive conduct. These conclusions are intimately intertwined with the ultimate determination that anticompetitive conduct has occurred in violation of the protected rights of Huron Valley.

Immediate appeals of collateral orders have been allowed in very few situations. *See, e.g., Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (qualified immunity); *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (absolute immunity); *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (double jeopardy); *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 1 (1951) (excessive bail); *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (security bond). *Cf. Richardson-Merrell, Inc. v. Koller,* —— U.S. ——, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) (grant of motion for attorney disqualification in civil case not appealable); *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (attorney disqualification in criminal case not appealable); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (denial of motion for attorney disqualification in civil case not appealable). As Justice Brennan in his dissent in *Mitchell* stated:

> We have always read the *Cohen* collateral order doctrine narrowly, in part because of the strong policies supporting the § 1291 final judgment rule. The rule respects the responsibilities of the trial court by enabling it to perform its function without a court of appeals peering over its shoulder every step of the way.

105 S.Ct. at 2825. We agree with this reasoning and decline to extend the right of immediate appeal any farther than the Supreme Court already has extended the right.

█ This Court is not required to review the state action issue simply because we review the qualified immunity issue. In *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Court allowed prejudgment review of a double jeopardy claim but declined to extend the review to a sufficiency of the indictment claim. *Id.* at 662–63, 97 S.Ct. at 2041–42. In refusing to extend the review, the Court noted that such action would encourage parties to seek review of a frivolous appeal-

able claim as a vehicle to secure review of other nonappealable determinations. *Id.* at 663, 97 S.Ct. at 2042. We agree.

Thus, the only issue before us is the defendant's claim to qualified immunity. In reviewing the denial we begin with this statement from *Mitchell:*

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it needs to determine is a question of law: *whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.*

105 S.Ct. at 2816 (footnote omitted) (emphasis added). In *Mitchell* the Court found that it was not clearly established that warrantless wiretapping aimed at gathering information regarding a domestic threat to national security was legal or illegal. 105 S.Ct. at 2818. Before *Mitchell,* the question had been expressly left open, *see Katz v. United States,* 389 U.S. 347, 358 n. 23, 88 S.Ct. 507, 515 n. 23, 19 L.Ed.2d 576 (1967), and several district courts had allowed such wiretapping. *Mitchell,* 105 S.Ct. at 2818–19; *see United States v. Dellinger,* No. 69 CR 180 (N.D.Ill. Feb. 20, 1970), *rev'd,* 472 F.2d 340 (7th Cir.1972), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); *United States v. O'Neal,* No. KC–CR–1204 (Kan. Sept. 1, 1970), *appeal dismissed,* 453 F.2d 344 (10th Cir.1972).

█ There can be no doubt here that the defendants' "conduct violated clearly established law." *Mitchell,* 105 S.Ct. at 2816. As a limitation on unbridled discretion, the certificate of need statute of Michigan re-

quired the Director of the Department and the Commission to consider eleven specific criteria in evaluating certificate of need applications.[3] The state also required that the director promulgate rules in accordance with and subject to the Michigan Administrative Procedure Act of 1969 to provide for the issuance of certificates of need. Mich.Comp.Laws § 331.454. The Administrative Procedure Act required the Department of Public Health, a state agency, to promulgate, process and publish all of its rules and regulations so that its discretion in issuing certificates of need was not absolute and uncontrolled. Mich.Comp.Laws § 24.201 *et seq.;* 110 Mich.App. at 243, 312 N.W.2d 422.

Even if the requirements of the Administrative Procedure Act were unclear at the outset, by 1976, the Michigan Court of Appeals had clarified that the Administrative Procedure Act required promulgation, processing and publication of all rules and regulations of a state agency. *See Mallchok v. Liquor Control Comm'n,* 72 Mich. App. 341; 249 N.W.2d 415 (1976). In *Mallchok,* the liquor commission, in evaluating applications for liquor licenses, had used an unwritten policy of not granting a license to an applicant whose establishment was within one half mile of an existing license holder. The statute governing the granting of licenses required that the commission's actions be in accordance with the provisions of the Administrative Procedure Act. Mich.Comp.Laws § 436.7. The court held that the policy must be promulgated, processed and publicized and that use of the unpromulgated policy was error. Both by statute and judicial decision, Michigan law was clearly established at least since 1976 that state agencies such as the Department of Public Health, whose actions were governed by statutes referencing the Michigan Administrative Procedure Act, must promulgate the rules and regulations they use in their evaluations.

The Michigan state courts found in the proceedings involving the Huron Valley application that the Department of Public Health and its Director were guided in their analysis of the certificate of need applications by the following three specific criteria:

(1) no new beds will be constructed in a service area which is classified as overbedded by the State Plan;

---

3. Those eleven criteria were

(1) The patterns and level of utilization, availability, and adequacy of existing facilities, institutions, programs, and services, in the immediate community and region concerned.
(2) The degree to which the residents and physicians of the immediate community and region concerned, are provided access to the services and programs of the health facility applying for the certificate of need.
(3) The availability, and adequacy and promotion of services such as preadmission, ambulatory, or home care services which may serve as alternatives or substitutes for inpatient or resident care.
(4) The possible economies and improvement in services to be derived from consolidation of highly specialized health facility services and from the operation of cooperative or shared central services including but not limited to laboratory, radiology, pharmacy, and laundry service.
(5) The possible economies and improvement in patient or resident care to be anticipated from affiliation or other contractual arrangements between facilities, institutions and service agencies and organization.
(6) The availability of manpower.

(7) That the health facility does not discriminate because of race, religion, color, national origin, age, or sex in any area of its operations including but not limited to employment, patient admission and care, room assignment, and professional and nonprofessional selection and training programs....
(8) In the case of a nonprofit hospital, that health facility is in fact governed by a body which is composed of a majority consumer membership.
(9) The applicant's ability to finance the project for which the certificate of need is requested and ability to finance the operation of the health facility following completion of the project.
(10) Local and regional rules, regulations and standards adopted by the appropriate local and regional area wide comprehensive health planning agencies which reflect the conditions, problems, and resources of the various areas represented by such agencies and which are not inconsistent with the foregoing criteria.
(11) Other factors and criteria which contribute toward the orderly development of quality health care for all citizens.
Mich.Comp.Laws § 331.455a.

(2) the highest priority will be granted to existing facilities seeking a certificate of need to modernize or correct licensing deficiencies; and

(3) the statute would be utilized to remove existing beds from line only in the most extreme circumstances.

110 Mich.App. at 242–43, 312 N.W.2d 422. These criteria were not promulgated and prospective applicants such as Huron Valley were not advised of their existence by the reviewing authority. *Id.* at 243, 312 N.W.2d 422. Under Michigan law, a rule is an agency standard or policy which implements the law that the agency administers. Mich.Comp.Laws § 24.207. Because of the purpose and content of the unpromulgated criteria, they were rules and should have been promulgated. Nothing in the eleven enumerated factors that the certificate of need statute directed the Department to consider suggested a preference for existing facilities. Nor did anything else in the certificate of need statute express a preference for existing facilities. *See also id.* at 244, 312 N.W.2d 422. By 1976, the Michigan law was clearly established and clearly applicable to Huron Valley's application for a certificate of need. The Department's use of unpromulgated criteria and the Commission's agreement with that use in considering applications of certificates of need violated that clearly established law. *See* 110 Mich.App. at 243–44, 312 N.W.2d 422.

While *Mitchell* requires a simple finding that the law was clearly established at the time the act was committed, we note that the *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), test for applying qualified immunity requires a finding that the official conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. Without a doubt, the defendants here should have known that their actions in applying the unpromulgated criteria violated the statute from which they derived their power to grant certificates of need. The statute initially created Huron Valley's protected interest and defined the criteria which must be used in granting or denying its certificate of need. The defendants should have known that their actions infringed upon Huron Valley's rights. *See Spruytte v. Walters,* 753 F.2d 498 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986). *See also Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). ·

The district court correctly denied these defendants the protections of the defense of qualified immunity, and we affirm on that issue only. On the state action antitrust exception issue, we dismiss the appeal.

Costs are awarded to Huron Valley.