23 F.3d 408
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Mignon Marie STONE, Plaintiff-Appellee,
v.
Richard HOLZBERGER; Richard A. Carpenter; Richard
Sizemore; William Profitt; Terry Payer;
Defendants-Appellants.
 No. 92-3675.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1994.
 
 Before: GUY and RYAN, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Defendants, Sheriff Richard Holzberger, Richard Carpenter, Richard Sizemore, William Profitt, and Terry Payer (hereinafter "sheriff defendants") appeal from denials of qualified immunity motions in this 42 U.S.C. Sec. 1983 action.[1] Our review of the record convinces us that the motions were properly denied, and we affirm on the basis of Judge Spiegel's well written 51-page opinion, which carefully considered all of the issues now raised on appeal. We write additionally only for further clarification.
 
 I.
 
 2
 Since the parties do not take issue with the district court's recitation of the facts, we set forth the facts from the trial court's opinion.
 
 
 3
 In May, 1987, Mignon Stone became romantically involved with Larry Jones. Ms. Stone and Mr. Jones eventually took up residence together. In April 1989, they rented two television sets and a video cassette recorder from Rent-a-Center. Two months later, Mr. Jones illegally sold the televisions.
 
 
 4
 In the early morning of October 24, 1989, Mr. Jones left a bar with a Butler County woman, Janavie Mills. Ms. Mills was reported missing later that day, and approximately ten days later, her decayed corpse was found bearing the marks of approximately eighty stab wounds. The Butler County Sheriff's Department considered Larry Jones the prime suspect in Ms. Mills' murder.
 
 
 5
 Meanwhile, Ms. Stone believed that authorities were searching for Mr. Jones in connection with the stolen Rent-a-Center televisions. For several weeks, Ms. Stone and Mr. Jones moved around, staying at various places in Hamilton, Ohio and Northern Kentucky.
 
 
 6
 On Tuesday, October 31, 1989, Ms. Stone learned that Mr. Jones was sought in connection with Ms. Mills' disappearance (Ms. Mills' body had not yet been discovered). Ms. Stone further learned that authorities wished to interview her as well. On Wednesday, November 1, 1989, Ms. Stone contacted Glen Ebbing to arrange a meeting with Butler County Sheriff Richard Holzberger. Mr. Ebbing is Ms. Stone's step-father, a retired City of Hamilton detective, and a long-time friend of Butler County Prosecutor John Holcomb.
 
 
 7
 Mr. Ebbing arranged for Ms. Stone, Mr. Jones and Sheriff Holzberger to meet at the Ebbing home on November 1, 1989. Mr. Jones declined to attend the meeting, but Ms. Stone met with Sheriff Holzberger anyway. When Sheriff Holzberger questioned Ms. Stone, she initially denied knowing Mr. Jones' whereabouts, even though she had been with him less than an hour before the meeting. When Ms. Stone indicated that she no longer wanted to speak to Sheriff Holzberger and that she wanted to leave, Sheriff Holzberger (assisted by Captain Richard Carpenter) arrested Ms. Stone. Ms. Stone was taken to the Butler County Jail and interrogated. She indicated that she did not wish to make a statement and was told she was under arrest as a material witness.
 
 
 8
 Ms. Stone remained in custody as a material witness without judicial review from the evening of November 1, 1989 until the late afternoon of November 6, 1989. On the afternoon of November 6, 1989, Ms. Stone was taken before Butler County Common Pleas Judge Moser. Judge Moser issued an "own recognizance" ("O.R.") bond permitting Ms. Stone's release.
 
 
 9
 Ms. Stone was escorted back to the Butler County Jail to retrieve her clothing and personal possessions. Ms. Stone identified a cocaine canister found at the murder scene as belonging to Mr. Jones. Apparently Sheriff Holzberger believed that Ms. Stone had not been completely candid during the six days of interrogation. He then contacted the prosecutor's office to see if he could continue to hold Ms. Stone as a material witness due to this allegedly new information. Prosecutor Holcomb informed the Sheriff that he could to continue to hold Ms. Stone until the OR bond could be rescinded. By that time, it was late in the afternoon on November 6, 1989. The Butler County Court of Common Pleas was closed. Sheriff Holzberger directed his subordinates to retain Ms. Stone until court reconvened the next morning.
 
 
 10
 The next day, November 7, 1989, an assistant prosecutor engaged in an ex parte, in camera conference with Judge Moser. Ms. Stone was not present nor was she informed of the conference. As a result of that meeting, Judge Moser set aside the O.R. bond and issued a $50,000 surety bond. Ms. Stone was not served with the new order, nor was she informed of the $50,000 bond. Ms. Stone remained in custody at the Butler County Jail until November 20, 1989 (a total of nineteen days). She was paid the statutory rate of $25 per day. Larry Jones ultimately pled guilty to the murder of Janavie Mills.
 
 
 11
 (App. 46-48.)
 
 
 12
 After the underlying criminal prosecution of Jones was resolved, Stone instituted this Sec. 1983 action alleging a variety of federal and pendent state claims against the defendants-appellants as well as other individual defendants and governmental units. The sheriff-defendants, as did the other defendants, filed summary judgment motions. Plaintiff also filed certain summary judgment motions. The sheriff-defendants' motions alleged qualified immunity as one ground for relief. The district court granted some relief to the sheriff-defendants on qualified immunity grounds and we address only those issues on which qualified immunity was denied, since that is the limit of our jurisdiction in these interlocutory appeals.[2] Mitchell v. Forsyth, 472 U.S. 511, 525 (1985).
 
 II.
 
 13
 The Detention From November 1, 1989, Until November 6, 1989
 
 
 14
 The sheriff-defendants contended that there was no clearly established right of a material witness to have a prompt appearance before a magistrate after arrest.
 
 
 15
 The district court concluded that plaintiff's claim only properly implicated Sheriff Holzberger and granted summary judgment to the other sheriff-defendants. Thus, our analysis is limited to the actions of the sheriff.
 
 
 16
 Holzberger does not claim that one arrested as a material witness has no right to an appearance before a magistrate for a prompt determination of probable cause. Rather, he argues that what constitutes a "prompt judicial determination" was not "clearly established" during the time period in question.
 
 
 17
 The Supreme Court has held that for a right to be clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, that does not mean "an official action is protected by qualified immunity unless the very act in question has previously been held unlawful...." Id.
 
 
 18
 There is no doubt that it has been clear for some time that a person arrested for a crime must be brought before a neutral magistrate for a probable cause hearing.
 
 
 19
 [A] policeman's on-the-scene assessment of probable cause provides legal justification ... for a brief period of detention.... Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate.
 
 
 20
 Gerstein v. Pugh, 420 U.S. 103, 113-14 (1975). Judge Spiegel reasoned that the rights of a material witness, charged with no wrongdoing, to be brought before a magistrate certainly are at least equivalent to those of a person charged with a crime. We agree. That still leaves the question, however, of how long a delay is permissible before the initial appearance to determine probable cause. The Supreme Court has now answered this question. In County of Riverside v. McLaughlin, 111 S.Ct. 1661 (1991), the Court set an outer limit of 48 hours, absent emergencies or demonstrable exigent circumstances.
 
 
 21
 All well and good except, as the sheriff points out, McLaughlin is a 1991 case and this was a 1989 incident. Does this mean, as defendant argues, that it was not "clearly established" in 1989, that five days was an impermissible time to incarcerate a material witness prior to a probable cause hearing? We think not. In a dissent filed by Justice Scalia in McLaughlin, he parted company with the majority and indicated the permissible delay should be limited to the time necessary for administrative processing, but not more than 24 hours. Since Justice Scalia was dissenting, we reference his opinion not for his view of what the law should be, but as a short-cut reference to what the law was.
 
 
 22
 With one exception, no federal court considering the question has regarded 24 hours as an inadequate amount of time to complete arrest procedures, and with the same exception every court actually setting a limit for probable-cause determination based on those procedures has selected 24 hours. (The exception would not count Sunday within the 24-hour limit.) See Bernard v. Palo Alto, 699 F.2d, at 1025; McGill v. Parsons, 532 F.2d 484, 485 (CA5 1976); Sanders v. Houston, 543 F.Supp. at 701-703; Lively v. Cullinane, 451 F.Supp., at 1003-1004. Cf. Dommer v. Hatcher, 427 F.Supp. 1040, 1046 (NDInd.1975) (24-hour maximum; 48 if Sunday included), rev'd in part, 653 F.2d 289 (CA7 1981). See also Gramenos v. Jewel Companies, Inc., 797 F.2d, at 437 (four hours "requires explanation"); Brandes, Post-Arrest Detention and the Fourth Amendment: Refining the Standard of Gerstein v. Pugh, 22 Colum.J.L. & Soc.Prob. 445, 474-475 (1989). Federal courts have reached a similar conclusion in applying Federal Rule of Criminal Procedure 5(a), which requires presentment before a federal magistrate "without unnecessary delay." See, e.g., Thomas, The Poisoned Fruit of Pretrial Detention, 61 N.Y.U.L.Rev. 413, 450, n. 238 (1986) (citing cases). And state courts have similarly applied a 24-hour limit under state statutes requiring presentment without "unreasonable delay." New York, for example, has concluded that no more than 24 hours is necessary from arrest to arraignment, People ex rel. Marian v. Brown, 164 App.Div.2d, at 62-64, 561 N.Y.S.2d, at 421-422, aff'd, 77 N.Y.2d 422, 568 N.Y.S.2d 575, 570 N.E.2d 223 (1991). Twenty-nine States have statutes similar to New York's, which require either presentment or arraignment "without unnecessary delay" or "forthwith"; eight states explicitly require presentment or arraignment within 24 hours; and only seven States have statutes explicitly permitting a period longer than 24 hours. Brandes, supra, at 478, n. 230. Since the States requiring a probable-cause hearing within 24 hours include both New York and Alaska, it is unlikely that circumstances of population or geography demand a longer period. Twenty-four hours is consistent with the American Law Institute's Model Code. ALI, Model Code of Pre-Arraignment Procedure Sec. 310.1 (1975). And while the American Bar Association in its proposed rules of criminal procedure initially required that presentment simply be made "without unnecessary delay," it has recently concluded that no more than six hours should be required, except at night. Uniform Rules of Criminal Procedure, 10 U.L.A.App., Criminal Justice Standard 10-4.1 (Spec.Pamph.1987). Finally, the conclusions of these commissions and judges, both state and federal, are supported by commentators who have examined the question. See, e.g., Brandes, supra, at 478-485 (discussing national 24-hour rule); Note, 74 Minn.L.Rev., at 207-209.
 
 
 23
 County of Riverside v. McLaughlin, 111 S.Ct. 1661, 1676-77 (1991).
 
 
 24
 Holzberger vigorously argues that the questions left unanswered in Gerstein were not answered until McLaughlin. To the degree that this is true, it is only true at the margin. No one, for example, could have concluded in 1989 that a probable cause hearing could be delayed two weeks absent exigencies. To the extent there was a gray area, it concerned time periods ranging from immediately to two or three days. We conclude that it was clearly established in 1989 that five days was clearly beyond a reasonable time. Accord Mabry v. County of Kalamazoo, 626 F.Supp. 912 (W.D.Mich.1986) (period of 60 hours clearly too long). Accordingly, we affirm the denial of Holzberger's qualified immunity motion. We also reject Holzberger's argument that he had no duty to take Stone before a magistrate regardless of what time period is involved. The cases cited in support of this contention are distinguishable. We need not enumerate a rule for all cases--suffice it to say here, where the sheriff was both the arresting officer and the keeper of the jail, he did have a duty to see that Stone was promptly afforded a probable cause hearing.
 
 
 25
 The trial court went further than to deny the defendant's summary judgment motion, however. It also granted plaintiff's summary judgment motion. However, an interlocutory appeal is not available when a summary judgment was granted which dispenses of less than the entire case. Accordingly, this issue is not properly before us and we express no opinion on the merits of this partial summary judgment.
 
 II.
 
 26
 The defendants[3] also raise a number of other issues which, with one exception, are not properly before us. Defendants claim that the court erred in (1) denying their motion for summary judgment on the issue of their alleged failure to advise Stone she could be released on a $50,000 surety bond,[4] (2) denying their motion for summary judgment on the conspiracy claim, (3) denying their motion for summary judgment on the unlawful search claim, and (4) denying their motion for qualified immunity on the right to vote claim.
 
 
 27
 We find the first three issues are not properly before us because our interlocutory jurisdiction is limited to addressing the denial of qualified immunity.[5] In Huron Valley Hospital, Inc. v. City of Pontiac, 792 F.2d 563 (6th Cir.), cert. denied sub nom. Walker v. Huron Valley Hosp. Inc., 479 U.S. 885 (1986), we held:
 
 
 28
 This Court is not required to review the state action issue simply because we review the qualified immunity issue. In Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), the Court allowed prejudgment review of a double jeopardy claim but declined to extend the review to a sufficiency of the indictment claim. Id. at 662-63, 97 S.Ct. at 2041-42. In refusing to extend the review, the Court noted that such action would encourage parties to seek review of a frivolous appealable claim as a vehicle to secure review or other nonappealable determinations. Id. at 663, 97 S.Ct. at 2042. We agree.
 
 
 29
 Thus, the only issue before us is the defendant's claim to qualified immunity.
 
 
 30
 Id. at 568.
 
 More significantly, we recently stated:
 
 31
 The City and Caprara also seek to invoke this Court's jurisdiction on issues other than qualified immunity relying on Carlson v. Conklin, 813 F.2d 769, 770-71 (6th Cir.1987), and Foster v. Walsh, 864 F.2d 416, 418 (6th Cir.1988). In Carlson and Foster, each court exercised appellate jurisdiction beyond the qualified immunity issue. However, in Huron Valley Hosp., Inc. v. City of Pontiac, 792 F.2d 563 (6th Cir.), cert. denied sub nom. Walker v. Huron Valley Hosp., Inc. 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986), the court concluded it was not required to review other issues raised on appeal "simply because we review the qualified immunity issue." Id. at 568; see also Birrell v. Brown, 867 F.2d 956, 956 n. 1 (6th Cir.1989). For the reasons articulated by the Supreme Court in Abney v. United States, 431 U.S. 651, 662-63, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977), and consistent with the Huron Valley decision, we conclude that only the qualified immunity issue raised by defendant police officers is properly before this Court. We therefore decline to hear the appeal of the City and Caprara.
 
 
 32
 Rich v. City of Mayfield Heights, 955 F.2d 1092, 1094 (6th Cir.1992).
 
 
 33
 The right to vote issue, on the other hand, appears to us to be a legitimate qualified immunity issue that could be decided by the district court as a matter of law. The district court concluded that Stone had a federally protected right to vote in the November 1989 state elections. We agree. Reynolds v. Sims, 377 U.S. 533, 554 (1964) ("Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections.") Since this right was clearly established in 1989, the court properly denied defendants' motion.
 
 
 34
 AFFIRMED.
 
 WELLFORD, Senior Circuit Judge, concurring:
 
 35
 I concur in the result reached and with the reasoning expressed in the Per Curiam opinion of the court. I would add, as a reason for declining to consider at this juncture the denial of the defendants' motion for summary judgment on the unlawful search issue, that the defendants did not argue their contention to be based upon qualified immunity grounds. In their brief (Defendants' Brief at 14), the defendants state: "[a]ppellants argued in the court below that the searches were conducted after Stone had abandoned the property and lost her possessory interest in the premises and that she thus lacked standing to assert a claim for an unlawful search." The defendants based their contention upon a lack of standing, not that the plaintiff had failed to state a clearly established violation of a constitutional right. The district court, moreover, as the defendants concede in their brief, denied the summary judgment motion based on the court's perception of the existence of a genuine issue of material fact on the alleged unlawful search claim.
 
 
 36
 [S]ummary judgment would not be appropriate if there is a factual dispute (i.e. a genuine issue of material fact) involving an issue on which the question of immunity [or qualified immunity] turns, such that it cannot be determined before trial whether the defendants did acts that violate clearly established rights....
 
 
 37
 Poe v. Haydon, 853 F.2d 418, 426 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989).
 
 
 38
 It is to be remembered also that the ultimate burden of proof is on the plaintiffs to show that defendants are not entitled to qualified immunity. Rich v. City of Mayfield Heights, 955 F.2d 1092, 1095 (6th Cir.1992). The plaintiff thus has the burden to prove any claim covered by the defendants' proper assertion of qualified immunity.
 
 
 39
 The plaintiff's claim of denial of a right to vote was specifically addressed against the defendant Carpenter. (See Plaintiff's Brief at 27). Whether any other defendant may be responsible for this denial would depend on circumstances and proof yet to be developed. Finally, as the plaintiff asserted:
 
 
 40
 This Court's jurisprudence regarding whether Cohen/Mitchell jurisdiction should be limited to whether defendants are entitled to qualifed immunity is not uniform. Compare, e.g., Huron Valley Hospital, Inc. v. City of Pontiac, 792 F.2d 563 (6th Cir.), cert. denied sub nom. Walker v. Huron Valley Hospital, Inc., 479 U.S. 855 (1986) (interlocutory jurisdiction limited to review of qualified immunity) with Carlson v. Conklin, 813 F.2d 769, 770-71 (6th Cir.1987) (jurisdiction extends to consideration of issues beyond qualified immunity). See also Rich v. City of Mayfield Heights, 955 F.2d 1092, 1094 (6th Cir.1992) (declining to hear appeals by other parties defendant "[f]or reasons articulated by the Supreme Court in Abney v. United States, 431 U.S. 651, 662-63 [ (1977) ]"....
 
 
 41
 Plaintiff's Brief at 24. We acknowledge, in any event, that we are bound by the Supreme Court's guidance in this area in Siegert v. Gilley, --- U.S. ----, 111 S.Ct. 1789, 1793 (1991):
 
 
 42
 We have on several occasions addressed the proper analytical framework for determining whether a plaintiff's allegations are sufficient to overcome a defendant's defense of qualified immunity asserted in a motion for summary judgment. Qualified immunity is a defense that must be pleaded by a defendant official. [Citations omitted]. Once a defendant pleads a defense of qualified immunity, "[o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.... Id. [ Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ], at 818, 102 S.Ct., at 2738.
 
 
 43
 ............................................................
 
 
 44
 ....................
 
 
 45
 * * *
 
 
 46
 A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.
 
 
 47
 Id.
 
 
 48
 Despite the lack of uniformity of our decisions in examining issues that relate to, but may not be directly connected with a qualified immunity defense, I concur in the conclusions we have reached herin as consistent with Siegert v. Gilley, supra.
 
 
 
 [1]
 The defendants' notice of appeal (App.99) is specifically limited to appealing the court's decision as it relates to qualified immunity issues
 
 
 [2]
 The district court's order also resolved a number of other claims, but those matters are not before us at this time
 
 
 [3]
 We use "defendants" as a general description, as not all of the sheriff-defendants are implicated in each of these other issues
 
 
 [4]
 The plaintiff stated in her brief (p. 23) that "she agrees with defendants that they were not under a constitutional duty to inform plaintiff of the existence of the $50,000 bond."
 
 
 [5]
 The defendants also argue qualified immunity should apply on the bond claim, but we do not see this as a qualified immunity issue. The essence of a qualified immunity defense is that what the actor is claimed to have done may be wrong under present standards, but that a reasonable actor would not have known it to be wrong at the time. The denial fo a motion asserting a general defense on the merits is not subject to interlocutory appeal. Elliott v. Thomas, 937 F.2d 338, 342 (7th Cir.1991)