*Simon v. City of New York*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

————————————

August Term, 2017

(Argued: March 1, 2018        Decided:  June 21, 2018)

Docket No. 17-1281

————————————

ALEXINA SIMON,

*Plaintiff-Appellant,*

—v.—

CITY OF NEW YORK, FRANCIS LONGOBARDI, Queens County Assistant District Attorney, DETECTIVE EVELYN ALEGRE, DETECTIVE DOUGLAS LEE,

*Defendants-Appellees.*[*]

————————————

B e f o r e:

KATZMANN, *Chief Judge*, CHIN, *Circuit Judge*, and NATHAN, *District Judge*.[**]

————————————

———————

[*] The Clerk of Court is directed to amend the official caption as set forth above.

[**] Judge Alison J. Nathan, United States District Court for the Southern District of New York, sitting by designation.

Plaintiff Alexina Simon brought this action in the United States District Court for the Eastern District of New York (Vitaliano, *J.*) under 42 U.S.C. § 1983, claiming that a state prosecutor and two police officers falsely arrested and imprisoned her in violation of the Fourth Amendment. Simon alleges that the defendants unlawfully detained her for 18 hours over two days on the authority of a warrant that, on its face, directed officers to bring Simon to court at a fixed date and time for a hearing to determine whether she should be detained as a material witness. Simon was never presented to the court. The district court held that the defendants are entitled to qualified immunity and granted summary judgment in their favor. We conclude that, with the facts taken in the light most favorable to Simon, the defendants violated Simon's clearly established Fourth Amendment rights and are therefore not entitled to qualified immunity. Accordingly, the judgment of the district court is VACATED and this case is REMANDED for further proceedings consistent with this decision.

————————

UGOCHUKWU UZOH, Ugo Uzoh, P.C., Brooklyn, NY, *for Plaintiff-Appellant*.

ELINA DRUKER (Richard Dearing, Devin Slack, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.

CODY H. WOFSY, ACLU Foundation Immigrants' Rights Project, San Francisco, CA; Lee Gelernt, ACLU Foundation Immigrants' Rights Project, New York, NY; Joel B. Rudin, Vice Chair, Amicus Committee, National Association of Criminal Defense Lawyers, New York, NY; Richard D. Willstatter, Chair, Amicus Curiae Committee, New York State Association of Criminal Defense Lawyers, White Plains, NY; Mariana Kovel, New York Civil Liberties Union Foundation, New York, NY, *for Amici Curiae* National Association of Criminal Defense Lawyers, New York State Association of Criminal Defense Lawyers, American Civil Liberties Union Foundation, New York Civil Liberties Union Foundation, *in support of Plaintiff-Appellant*.

————————

KATZMANN, *Chief Judge*:

This case takes us to the intersection of an allegedly wrongful arrest and detention on a material witness warrant, the Fourth Amendment, and qualified immunity. Plaintiff Alexina Simon brought this action in the United States District Court for the Eastern District of New York (Vitaliano, *J.*) under 42 U.S.C. § 1983, claiming that a state prosecutor and two police officers falsely arrested and imprisoned her in violation of the Fourth Amendment. Simon alleges that the defendants unlawfully detained her for 18 hours over two days on the authority of a warrant that, on its face, directed police officers to bring Simon to court at a fixed date and time to determine whether she should be adjudged a material witness and detained. Simon was never presented to the court. The district court, relying chiefly on the lack of case law analyzing the constitutionality of material witness seizures and detentions, held that the defendants are entitled to qualified immunity and granted summary judgment in their favor.

We conclude that, with the facts taken in the light most favorable to Simon, the defendants violated the Fourth Amendment. A warrant must be executed in conformity with its terms. *See, e.g.*, *Miller v. Kennebec Cty.*, 219 F.3d 8, 11 (1st Cir. 2000) ("[I]t is self-evident that a seizure conducted pursuant to an arrest warrant

3

must conform to the terms of that warrant."). Here, the warrant required the defendants to produce Simon to court on August 11, 2008, at 10:00 a.m., but they instead detained her for 18 hours over August 11 and 12, occasionally interrogated her about a crime, and never presented her to a judge.

We further conclude that the unlawfulness of the defendants' conduct was clearly established when they acted. This is an uncommon "'obvious case'" in which "the unlawfulness of the [defendants'] conduct is sufficiently clear even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)). No officer who is executing a warrant that requires that a prospective material witness be brought before a judge at a fixed date and time to determine whether the witness should be detained can reasonably believe that she is free instead to detain and interrogate the witness for hours on end outside of court supervision.

We are also unpersuaded by the defendants' contention that they are entitled to qualified immunity from claims arising out of the second day's events because reasonable officers could disagree about whether Simon consented to accompany them. A long line of cases holds that securing someone's presence at a

4

police station using coercive tactics like those employed by the defendants here—including entering Simon's home and telling her that her attendance is mandatory—is constitutionally indistinguishable from a traditional arrest.

Accordingly, the judgment of the district court is VACATED and this case is REMANDED for further proceedings consistent with this decision.

## BACKGROUND

New York State's material witness statute provides that a court, upon an appropriate application, may order that a person who has information material to a criminal proceeding be detained to secure her attendance at the proceeding. *See* N.Y. Crim. Proc. Law §§ 620.10–50. The statute affords significant procedural protections to prospective material witnesses.

First, the applicant—here, the government—must apply for a "material witness order," which is "a court order (a) adjudging a person a material witness in a pending criminal action and (b) fixing bail to secure his future attendance thereat." *Id.* §§ 620.10, 620.30. Such an order may be issued if there is "reasonable cause to believe" that a prospective witness in a criminal action "[p]ossesses information material to the determination of such action" and "[w]ill not be amenable or responsive to a subpoena at a time when his attendance will be

5

sought." *Id.* § 620.20(1); *see also People v. Maldonado*, 86 N.Y.2d 631, 635 (1995) ("Reasonable cause means probable cause."). If presented with a "well founded" application, a court may convene a hearing to determine whether "[someone] should be adjudged a material witness." N.Y. Crim. Proc. Law § 620.30(2)(a). If there is also reasonable cause to believe that "the witness would be unlikely to respond" to an order to appear at said hearing (or has already flouted one), then the court may issue "a warrant . . . directing [a police] officer to take such prospective witness into custody within the state and to bring him before the court forthwith in order that a proceeding may be conducted to determine whether he is to be adjudged a material witness." *Id.* § 620.30(2)(b).

Once the prospective material witness has been brought before the court, the judge "must inform him of the nature and purpose of the proceeding, and that he is entitled to a prompt hearing upon the issue of whether he should be adjudged a material witness." *Id.* § 620.40(1). The hearing can be held immediately or adjourned to allow the witness to arrange for counsel. *Id.* § 620.40(2). The applicant must show by "a preponderance of the evidence all facts essential to support a material witness order," *i.e.*, that the person has information material to a criminal proceeding and will not respond to a subpoena

6

requiring her attendance thereat. *Id.* § 620.50(1)(a). An adjudged material witness may either be released on bail or committed to state custody. *Id.* § 620.50(3).

In 2008, Shantell McKinnies, an officer of the New York Police Department (NYPD), was under investigation for potential insurance fraud.[1] McKinnies' car, which she had reported stolen, had turned up in a "chop shop" covertly run by the NYPD. According to McKinnies, her friend "Alexandra Griffin" was the last person to drive her car. But "Alexandra Griffin" told an NYPD officer that she had never been given the vehicle, was not the last person to drive it, and did not even have a driver's license, raising suspicions that McKinnies had filed a false report. "Alexandra Griffin" also told the officer that her surname was not Griffin, but Simon. It would eventually become clear that her real name is Alexandra Dormoy, and that Dormoy is the daughter of plaintiff Alexina Simon.

The McKinnies investigation was assigned to defendant Francis Longobardi, who was at the time an Assistant District Attorney in the Public Integrity Bureau of Queens County District Attorney's Office. By June 2008,

---

[1] Because Simon appeals from a grant of summary judgment against her, we consider the facts—many of which are disputed—in the light most favorable to her. *See Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017).

Longobardi, who wanted to speak with Dormoy about the investigation, had come to believe that her name was not Alexandra Simon or Alexandra Griffin, but Alexina Simon. Longobardi sent Dormoy several subpoenas that went unanswered and spoke with Dormoy a handful of times by telephone. On August 8, 2008, Longobardi and Dormoy had a telephone conversation during which Longobardi stated, "I'm trying to reach Alexina Simon" and asked, "Is this Alexina Simon?" J. App'x 351. Dormoy did not answer the question but continued to speak as though she were Simon. Dormoy refused to appear for an interview or say anything about the case and told Longobardi that the subpoenas were harassing.

Left with few options, Longobardi sought to compel Dormoy to disclose what she knew. On August 8, 2008, he applied to Queens County Supreme Court for a hearing on August 11, 2008, at 10:00 a.m. "for the purpose of adjudging Alexina Simon a material witness" and an arrest warrant to secure Alexina Simon's attendance at the hearing. J. App'x 31. Justice Kenneth C. Holder entered an order convening such a hearing at the requested date and time. Justice Holder also issued a warrant for Simon's arrest. In relevant part, the warrant recited that "an order having been granted . . . directing . . . ALEXINA SIMON to appear at a

8

hearing at the Queens County Courthouse in the City of New York on August 11, 2008 at 10:00 in the forenoon to determine whether ALEXINA SIMON should be adjudged a material witness," police officers were "commanded forthwith to take the above-named ALEXINA SIMON into custody . . . and bring her before this Court in order that a proceeding may be conducted to determine whether she is to be adjudged a material witness." *Id.* at 27 (emphasis omitted). Longobardi gave the warrant to defendants Evelyn Alegre and Douglas Lee, both NYPD detectives.

On the morning of August 11, 2008, Simon was working her housekeeping shift at the Millennium Broadway Hotel. A little after 10:00 a.m., a coworker told her that Lee and Alegre wanted to see her. The detectives told Simon they had a warrant for her arrest, threatened to handcuff her and use force if she did not voluntarily come with them, and said that she would learn the reason for her arrest later. Lee and Alegre drove Simon to the precinct, occasionally asking Simon about McKinnies' car. Simon knew McKinnies from her neighborhood and guessed that McKinnies was in trouble, but Simon didn't know why.

At the precinct, the detectives brought Simon to a small room, told her to wait there, and closed the door. Simon remained there for most of the day by herself. At some point, Lee gave her some coffee, but she was never given any

food. Many hours later, after dark, Lee took Simon to a courthouse. Seated outside a courtroom, Simon briefly met with Longobardi, who questioned her about McKinnies' car. At some point during the day, Simon told Lee that the defendants were interested in Dormoy, but Simon did not recall whether she also mentioned her daughter to Longobardi. Longobardi, for his part, realized that Simon was the wrong person as soon as he met her.

After the courthouse discussion, the detectives brought Simon back to the small room and told her she could leave, but that she must return the next day to answer more questions. To drive the point home, they reminded Simon that they had a warrant for her arrest. The detectives also told Simon that they wanted to speak to Dormoy and that Simon should bring her in, too. Alegre and Lee drove Simon to her Brooklyn residence. Lee was polite, but Alegre accused Simon of hiding the truth about McKinnies' car. Simon arrived at her home (where Dormoy also sometimes lived) after 8:00 p.m. Simon told her daughter that the police wanted to speak with her, but Dormoy said she didn't know why.

Alegre and Lee arrived at Simon's home at around 9:00 a.m. the following morning. Alegre went inside to get Simon. She told Simon that she had to go back to the precinct to answer more questions and again mentioned the warrant.

Alegre asked Dormoy to go with them, but she refused. The detectives drove Simon back to the precinct and put her in a small room. For about three hours, people came in and out and asked her questions about McKinnies' car. Simon then stayed in the room by herself for another two hours, when Alegre returned. Lee again brought Simon coffee but no food. Simon did not speak to Longobardi that day. Eventually Simon was told she could leave. She left the police station at 5:00 p.m., took the train to Brooklyn, and arrived home at around 6:30 p.m. All told, the defendants held Simon against her will for 18 hours over two days.

Although we must consider the facts in the light most favorable to Simon for purposes of this appeal, *see Dufort*, 874 F.3d at 343, we note that the defendants describe both days very differently. As they would have it, on the morning of August 11, Simon was taken directly from the hotel to the courthouse, where she told the defendants that they were after her daughter and agreed to persuade Dormoy to cooperate. Simon was returned home by midafternoon. On August 12, Simon told the detectives that Dormoy refused to help and asked to be taken to the precinct, where she spoke briefly with Longobardi again before Lee drove her home. By the defendants' telling, Simon spent around nine hours in all with them, nearly all of it voluntarily.

11

On March 27, 2009, Simon commenced this action under 42 U.S.C. § 1983, claiming that Longobardi, Alegre, and Lee falsely arrested and imprisoned her in violation of the Fourth Amendment. Following discovery, the district court (Vitaliano, *J.*) granted summary judgment in favor of the defendants, concluding that the defendants were absolutely immune from Simon's claims. This Court vacated the judgment, holding that police officers and prosecutors are not entitled to absolute immunity from suits alleging unconstitutional execution of a material witness warrant. *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013). On remand, the district court granted summary judgment in favor of the defendants a second time. The district court, relying chiefly on the paucity of authority addressing material witness warrants and detentions, held that the defendants were entitled to qualified immunity because any violation of Simon's constitutional rights was not clearly established when they acted. This appeal followed.

## DISCUSSION

### I.    Standard of Review

"We review a district court's grant of summary judgment *de novo*, 'resolving all ambiguities and drawing all reasonable factual inferences in favor of

the party against whom summary judgment is sought.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (brackets omitted)). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## II.  Qualified Immunity

State executive officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Wesby*, 138 S. Ct. at 589 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A right is clearly established when its "'contours . . . are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (brackets omitted). "[A] case directly on point" is unnecessary, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* In analyzing qualified immunity, we generally consider

13

Supreme Court decisions, our own decisions, and decisions from other circuit courts. *See Terebesi v. Torreso*, 764 F.3d 217, 231 & n.12 (2d Cir. 2014).

"The 'clearly established' standard . . . requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. "Such specificity is especially important in the Fourth Amendment context, where . . . 'it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)) (brackets omitted). However, "officials can still be on notice that their conduct violates [clearly] established law even in novel factual circumstances," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), and "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances," *Wesby*, 138 S. Ct. at 590 (quoting *Brosseau*, 543 U.S. at 199).

## III.  Qualified Immunity for the Detention on the August 11, 2008

We have "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 563 U.S. at 735. We begin with whether,

14

with the facts taken in the light most favorable to Simon, the defendants violated her constitutional rights.

**A. Whether the August 11 Detention Violated the Fourth Amendment**

Simon, joined by *amici*, argues that the defendants violated the Fourth Amendment by detaining her for ten hours on August 11, 2008, in violation of the material witness warrant that required them to produce her to court that morning at 10:00 a.m. We agree.

Our analysis rests on two principles. First, courts analyze the constitutionality of material witness seizures under the Fourth Amendment. *See id.* at 735–36 (explaining that an arrest pursuant to a material witness warrant "qualifies as a seizure of a person . . . and so must be reasonable under the circumstances" (citation and internal quotation marks omitted)). As the Third Circuit has cogently explained:

> A person who is subjected to conditions that would constitute a seizure if she had been arrested for a crime is still seized even though she is not a criminal suspect but a material witness. She has been arrested and deprived of liberty for precisely the same purpose as a pre-trial detainee in a criminal case: to ensure that she shows up in court as required by the state. The Fourth Amendment

15

> therefore governs [the] inquiry into the constitutionality
> of [a prospective material witness's] detention.

*Schneyder v. Smith*, 653 F.3d 313, 322 (3d Cir. 2011) (citation omitted).[2]

Second, a person detained as a material witness enjoys any Fourth Amendment protection that is extended to criminal suspects. After all, the Fourth Amendment protects "[t]he right of *the people* to be secure in their persons," U.S. Const. amend. IV (emphasis added), not merely the rights of those suspected of crimes. *See Schneyder*, 653 F.3d at 322. More than that, a prospective material witness is less culpable than a criminal suspect. The former is suspected of refusing to share information about a crime, whereas the latter is suspected of having committed one. For these reasons, and as the defendants conceded at oral

---

[2] We observe that although arrests pursuant to material witness statutes are widely assumed to be constitutional, the question is not entirely settled. *Compare Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 617 (1929) ("The constitutionality of [the federal material witness] statute apparently has never been doubted."), *and Stein v. New York*, 346 U.S. 156, 184 (1953) ("The duty to disclose knowledge of crime rests upon all citizens. It is so vital that one known to be innocent may be detained, in the absence of bail, as a material witness."), *overruled in part on other grounds by Jackson v. Denno*, 378 U.S. 368 (1964), *with al-Kidd*, 563 U.S. at 743 (noting that if the term "probable cause" in the Fourth Amendment "mean[s] only probable cause to suspect a violation of law," then any arrest pursuant to material witness warrant is unlawful). As Simon does not challenge her initial arrest on August 11, we will assume that it was consistent with the Fourth Amendment.

argument, the protections the Fourth Amendment provides to criminal suspects extend to material witnesses (or prospective material witnesses). *See al-Kidd*, 563 U.S. at 733 ("Material witnesses enjoy the same constitutional right to pretrial release as other federal detainees . . . ."); *Padilla v. Rumsfeld*, 352 F.3d 695, 699 (2d Cir. 2003) (noting that a person "held as a material witness" is "entitled to the constitutional protections extended to other citizens"), *rev'd on other grounds by Rumsfeld v. Padilla*, 542 U.S. 426 (2004); *Stone v. Holzberger*, 23 F.3d 408 (table), 1994 WL 175420, at *3 (6th Cir. 1994) (unpublished) ("[T]he rights of a material witness, charged with no wrongdoing, to be brought before a magistrate certainly are at least equivalent to those of a person charged with a crime.").

Among these protections is the rule that "a seizure conducted pursuant to an arrest warrant must conform to the terms of that warrant." *Miller*, 219 F.3d at 11; *accord Yanez-Marquez v. Lynch*, 789 F.3d 434, 467 (4th Cir. 2015) ("[T]he nighttime execution of a daytime warrant violates the Fourth Amendment, absent consent or exigent circumstances."); *O'Rourke v. City of Norman*, 875 F.2d 1465, 1467, 1474–75 (10th Cir. 1989) (same, for a bench warrant); *cf. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 394 n.7 (1971) ("[T]he Fourth Amendment confines an officer executing a search warrant strictly

17

within the bounds set by the warrant."). The facts of *Miller* closely parallel the facts of this case. A police officer arrested a criminal suspect pursuant to a warrant reading "this warrant to be executed by bringing defendant immediately before a sitting Judge." *Miller*, 219 F.3d at 10. Instead of promptly producing the suspect to court, the officer jailed her over a long weekend, during which she was placed in a cell next to male inmates and repeatedly strip-searched. *Id.* The court concluded that disobeying the plain terms of the warrant violated the arrestee's Fourth Amendment rights. *Id.* at 11.

Some courts have explained that the reason for this rule is that a warrant's execution instructions are coextensive with the authorizing official's determination of reasonableness for a particular search or seizure. *See O'Rourke*, 875 F.2d at 1474. Under this view, where a magistrate instructs that a search or seizure be carried out in a prescribed fashion (say, in the daytime only, or by bringing the suspect directly to court), to otherwise execute the warrant is to act unreasonably. As the Fourth Circuit explained, a contrary ruling "would completely eviscerate the issuing magistrate's determination of reasonableness and would nullify the requirement of a prior impartial determination that a particular search will be reasonable." *Yanez-Marquez*, 789 F.3d at 466–67 (citations

18

and internal quotation marks omitted). For its part, the First Circuit thought this rule so "self-evident" that it did not set forth its thinking in any significant detail. *Miller*, 219 F.3d at 11.

We agree with this reasoning and would add that it is based on two fundamental Fourth Amendment precepts. First, "the reasonableness requirement of the Fourth Amendment applies not only to prevent searches and seizures that would be unreasonable if conducted at all, but also to ensure reasonableness in the manner and scope of searches and seizures that are carried out." *Lauro v. Charles*, 219 F.3d 202, 211 (2d Cir. 2000) (alterations and internal quotation marks omitted)); *accord United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." (citation omitted)). This rule limits the authority of the officers charged with executing warrants. It precludes officers armed with a valid warrant from, for example, using excessive force to effect a seizure, *see Terebesi*, 764 F.3d at 234, or staging a "perp walk" for the benefit of the press, *see Lauro*, 219 F.3d at 203.

Second, because a warrant generally authorizes no more than what it expressly provides, to act unreasonably beyond the terms of a warrant is akin to

acting without a warrant at all. *See Horton v. California*, 496 U.S. 128, 140 (1990) ("If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more."). This principle is mainly encountered in cases examining the requirement that a warrant state with particularity "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In those cases, we "look directly to the text" of a warrant to evaluate the scope of authority that it grants. *United States v. Bershchansky*, 788 F.3d 102, 111 (2d Cir. 2015) (holding that federal agents exceeded the scope of a search warrant by searching an apartment not specifically listed in the search warrant). Searches and seizures that exceed the scope of the warrant are considered warrantless; they must be justified, if at all, by some exception to the warrant requirement. *See United States v. Voustianiouk*, 685 F.3d 206, 212 (2d Cir. 2012). Under this principle, a warrant authorizing the arrest of one person does not authorize the seizure of someone with a similar name, *see West v. Cabell*, 153 U.S. 78, 85 (1894), and a "John Doe" arrest warrant containing no description of the suspect is invalid, *United States v. Jarvis*, 560 F.2d 494, 496–97 (2d Cir. 1977). Yet the principle that warrants grant only the authority they expressly provide

goes beyond the particularity requirement. The Supreme Court long ago held, for example, that a warrant to search a tavern "gave [police officers] no authority whatever" to search its customers because such a search was unsupported by probable cause. *Ybarra v. Illinois*, 444 U.S. 85, 92 (1979).

Together, these principles yield the commonsense rule that police officers must abide by the limitations set forth on the face of a warrant they are executing. A warrant must be executed reasonably; a warrant generally authorizes only what its terms expressly provide; and a warrant's execution terms represent the magistrate's neutral determination of how a warrant is to be executed. A seizure that flouts the plain terms of its authorizing instrument is therefore unreasonable.[3]

The defendants' arguments to the contrary are unpersuasive. They first point out that a constitutional claim cannot be premised on a violation of state

---

[3] We thus reject the defendants' unsupported assertion that a warrant's execution instructions do not constrain officers' authority to seize. The defendants wholly fail to address decisions like *O'Rourke* and *Miller* and point to no alternative authority suggesting that a warrant's terms are simply suggestions. Their single case citation is plainly inapposite. *See Watson v. City of New York,* 92 F.3d 31, 37–38 (2d Cir. 1996) (state rule of criminal procedure does not create a "liberty interest" under the Due Process Clause of the Fourteenth Amendment).

statutory rights. *See Powers v. Coe*, 728 F.2d 97, 105 (2d Cir. 1984). That is true but irrelevant. Simon complains that the defendants flouted the express terms of a warrant, not merely a state statute, and as we have explained, disobeying the plain terms of a warrant violates the Fourth Amendment. Nor is a constitutional claim for unlawful warrant execution transformed into a state-law claim merely because the warrant was issued under state law. *See, e.g.*, *Terebesi*, 764 F.3d at 223, 231–32 (analyzing whether a warrant issued under state law was reasonably executed). The defendants also contend that compliance with the terms of a material witness warrant cannot be required because one court has upheld a warrantless material witness arrest. *See White by Swafford v. Gerbitz*, 892 F.2d 457, 461 (6th Cir. 1989). Yet even assuming *arguendo* that a material witness can lawfully be arrested absent a warrant, this is of no help to the defendants. A warrant authorizing an arrest is not required in all cases, *see, e.g.*, *United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008), yet an officer acting pursuant to one cannot ignore its terms, *see, e.g.*, *O'Rourke*, 875 F.2d at 1474–75.

In this case, the question is whether the warrant required that Simon be brought to court for the scheduled material witness hearing. We conclude that it did. The warrant directed police officers to arrest Simon "forthwith" and to

"bring her before this Court in order that a proceeding may be conducted to determine whether she is to be adjudged a material witness," and it stated that that proceeding was to take place on August 11, 2008, at 10:00 a.m. J. App'x 27. Viewed in its entirety, this warrant must be understood to command police officers to arrest Simon and deliver her to court for the hearing at the appointed date and time. We recognized as much in our prior decision in this case. *See Simon*, 727 F.3d at 173 ("[T]he warrant here directed the executing officers to arrest Simon and bring her before the court at 10:00 a.m. on August 11 for a hearing on whether she could properly be considered a material witness." (emphasis omitted)).

If the plain text of the warrant were not enough, the statutory backdrop against which the defendants acted confirms that the warrant required Simon's production to court at the scheduled time. As explained above, New York law requires a full-dress hearing before someone can be adjudged and detained as a material witness, and a material witness warrant is issued expressly to secure the prospective witness's attendance at the hearing. *See* N.Y. Crim. Proc. Law §§ 620.30, 620.50. For this reason, Longobardi requested that the court "order a hearing for August 11, 2008 at 10:00AM" to adjudge Simon a material witness and

23

that the court "order a warrant for the arrest of Alexina Simon *so that she can be present at said hearing*." J. App'x 31 (emphasis added). Thus, when the warrant issued, it empowered the defendants only to produce Simon to the court at the appointed date and time. Indeed, the defendants appear to have understood as much, for they first arrested Simon during the morning of August 11 around the time of the scheduled hearing.

On Simon's version of the facts, the defendants then proceeded to flout the warrant, "actively *avoiding* the court-ordered material witness hearing," *Simon*, 727 F.3d at 173, and detained her for the entire day in a small room. We conclude that this is a violation of the Fourth Amendment. *See Miller*, 219 F.3d at 11.

It is important, however, to recognize the limits of our ruling. We do not hold that, where a warrant requires officers to produce a prospective material witness to court at a fixed date and time, it would violate the Fourth Amendment merely to bring the prospective witness late. Some delays are unavoidable. And we do not mean to suggest that police officers and prosecutors executing such a warrant are necessarily forbidden to solicit a prospective material witness's consent to proceed in some other fashion. Nor do we address whether the procedural protections that New York affords to prospective material witnesses

24

are constitutionally required. We hold only that the defendants, who were executing a warrant requiring Simon's production to court at an appointed time and date for a hearing on whether she should be adjudged and detained as a material witness, violated the Fourth Amendment by subjecting her to a daylong detention instead.

**B.      Whether the August 11 Detention Violated Clearly Established Law**

Our second inquiry is whether "the unlawfulness of the [defendants'] conduct was clearly established" in August 2008. *Wesby*, 138 S. Ct. at 589 (internal quotation marks omitted). The district court, relying chiefly on the paucity of case law dealing with material witness seizures, held that any violation of Simon's Fourth Amendment rights was not clearly established. Simon, joined by *amici*, concedes that few cases deal with material witnesses but argues that the constitutional violation here is so plain that the defendants are not entitled to qualified immunity. We agree with Simon.

Our first task is to define with specificity the constitutional right at issue. *See id.* at 590. This task involves striking a balance between defining the right specifically enough that officers can fairly be said to be on notice that their

conduct was forbidden, *see id.*, but with a sufficient "measure of abstraction" to avoid a regime under which rights are deemed clearly established only if the precise fact pattern has already been condemned, *Terebesi*, 764 F.3d at 237 n.20. With those principles in mind, we consider whether it was clearly established in August 2008 that a person who is arrested on a warrant requiring her production to court at a fixed date and time has a right not to be detained for ten hours outside of court supervision.

Were *Miller* a decision of this Court, it alone would clearly establish the unlawfulness of the defendants' conduct. As noted above, in that case the First Circuit concluded that a police officer violated the Fourth Amendment where, after arresting someone on a warrant reading "this warrant to be executed by bringing defendant immediately before a sitting Judge," he instead had her jailed over a long weekend. *See Miller*, 219 F.3d at 10–11. We need not belabor the parallels to this case. As it is, *Miller*, *O'Rourke*, and *Yanez-Marquez*, when considered in light of this Court's decisions explaining that an officer executing a warrant must generally comply with its terms, *see, e.g.*, *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988), might be thought to "clearly foreshadow" our ruling today, which would likewise be sufficient to conclude that the defendants are not

26

entitled to qualified immunity. *Terebesi*, 764 F.3d at 231 (internal quotation marks omitted).

But we need not decide whether these out-of-circuit authorities clearly foreshadow today's decision. This is one of the uncommon "'obvious case[s]'" in which "the unlawfulness of the [defendants'] conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 138 S. Ct. at 590 (quoting *Brosseau*, 543 U.S. at 199); *accord K.H. Through Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990) ("The easiest cases don't even arise."). Viewed in the light most favorable to the plaintiff, the record shows that Simon was arrested on a warrant requiring the arresting officers to bring her to court at 10:00 a.m. on August 11, 2008, for a hearing on whether she should be detained as a material witness. The defendants began to comply with those requirements by arresting her during the morning of August 11 around the time the hearing was scheduled to begin. Instead of bringing her to court for the hearing, they elected, on their own, to detain her for ten hours in a small room. We conclude, with the First Circuit, that this Fourth Amendment violation is so obvious that it violated clearly established law despite the lack of binding authority directly on point. *See Miller*, 219 F.3d at 11 ("While there is no case law directly relating to arrest

27

warrants, it is self-evident that a seizure conducted pursuant to an arrest warrant must conform to the terms of that warrant.").

The defendants argue that any violation cannot be deemed clearly established because no cases have applied this rule to a material witness warrant and, more broadly, because so few cases address such warrants at all. We acknowledge that few decisions have examined the constitutional limits of material witness seizures and detentions and that none of them involved a factual scenario quite like this one.[4] But more than that is needed for qualified immunity. *See Hope*, 536 U.S. at 741 ("[O]fficials can still be on notice that their conduct violates [clearly] established law even in novel factual circumstances."). Moreover, the factual distinction advanced here—that the defendants acted on a material witness warrant, not a criminal arrest warrant—is irrelevant. Any warrant must be executed in reasonable conformity with its terms—a rule so integral to Fourth Amendment doctrine that we are untroubled that no case has

---

[4] *Cf. United States v. Awadallah*, 349 F.3d 42, 64–70 (2d Cir. 2003) (addressing challenge to the validity of a material witness warrant); *White*, 892 F.2d at 461 (analyzing lawfulness of a warrantless material witness arrest).

previously applied it to a material witness warrant. *See, e.g., Matias*, 836 F.2d at 747; *O'Rourke*, 875 F.2d at 1474–75.

Relatedly, the defendants contend that any violation cannot be considered clearly established in light of the uncertainty surrounding whether a material witness warrant, which issues on a standard other than probable cause to believe a crime has been committed, is a true "Warrant" under the Warrant Clause of the Fourth Amendment. *See al-Kidd*, 563 U.S. at 743 (reserving the question). The answer to that question will determine the appropriate standard by which to analyze some material witness questions. *Compare Schneyder*, 653 F.3d at 324 & n.15 (adopting a reasonableness standard while assuming that arrest pursuant to a material witness warrant is constitutional), *with Awadallah*, 349 F.3d at 64 (analyzing a warrant's validity under a probable cause standard). But the unresolved nature of these weighty questions (on which we express no view) gives us no pause here. As we recognized in our previous decision in this case, we deal here with a question of warrant *execution*, *see Simon*, 727 F.3d at 172–74, where it has long been settled that the ultimate test is reasonableness, *see Ramirez*, 523 U.S. at 71. And for the reasons explained above, we think it obvious that flouting the plain terms of the warrant as the defendants did here is unreasonable.

The defendants are not entitled to qualified immunity simply because some other questions remain unanswered.[5]

Accordingly, resolving factual ambiguities and drawing reasonable inferences in Simon's favor, we conclude that defendants' daylong detention of Simon on August 11, 2008, violated clearly established law. At this stage of the litigation, the defendants are therefore not entitled to qualified immunity from claims arising from the detention on August 11, 2008.[6]

## IV.    Qualified Immunity for the Seizure and Detention on August 12, 2008

Finally, we consider whether defendants' conduct on August 12 violated the Fourth Amendment and whether any violation was clearly established as of

---

[5] The defendants might also be understood to argue that they are entitled to qualified immunity because the warrant is ambiguous. They contend that because courts have interpreted the term "forthwith" differently in different contexts, reasonable officials might have understood that term to mean something other than "immediately." *See, e.g.*, *Ayers v. Coughlin*, 72 N.Y.2d 346, 354 (1988) (statute requiring "forthwith" transfer of inmates satisfied by transfer within ten days). However, for the reasons explained above, this warrant unambiguously directed officers to bring Simon to court at 10:00 a.m. on August 11, 2008.

[6] Because we accept Simon's argument that the defendants' defiance of the warrant's terms violated the Fourth Amendment, we need not consider her other contentions. Thus, although the parties devote significant attention to the legal issues raised by the mistaken identity at the center of this case—the defendants' true target was Dormoy, not Simon—we do not reach them.

August 2008. For the reasons stated above, and taking the facts in the light most favorable to Simon, we hold that, to the extent the material witness warrant is claimed to justify the defendants' conduct on August 12, the seizure and detention violated Simon's clearly established Fourth Amendment rights.

That conclusion does not end our inquiry, however. The defendants press the alternative argument, not passed on by the district court, that the events of August 12 are justified by their allegedly reasonable belief that Simon consented to return to the precinct for questioning. We exercise our discretion to address in the first instance the "purely legal questions" this argument raises. *J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ.*, 278 F.3d 119, 125 (2d Cir. 2002).

### A. Whether the August 12 Seizure and Detention Violated the Fourth Amendment

Although the defendants focus their efforts on the second half of the qualified immunity doctrine, we first decide whether they violated Simon's constitutional rights. The defendants argue that Simon was neither seized nor detained on August 12 because she willingly returned to the precinct for another day's worth of questioning. Our basic inquiry is whether Simon consented or was coerced.

31

"[T]he police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (plurality)). "[C]ircumstances that might indicate a seizure" include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (per curiam) (quoting *Mendenhall*, 446 U.S. at 544). This "necessarily imprecise" test "is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Chesternut*, 486 U.S. at 573.

The defendants seized Simon. The evidence, with the facts taken in the light most favorable to Simon, shows that at the end of Simon's ten-hour detention on August 11, the defendants reminded her that they had a warrant for her arrest and ordered her to return the next day. The following morning, Lee and Alegre arrived at Simon's residence, where Alegre entered Simon's home, mentioned the warrant for Simon's arrest, and told Simon she had to come answer more

32

questions. No reasonable person in Simon's position would believe that she was free to refuse to accompany the detectives to the precinct, even though the defendants did not use (or threaten to use) force or handcuffs. Because this was a seizure and not a consensual encounter when the facts are considered in the light most favorable to Simon, the defendants violated Simon's Fourth Amendment rights on August 12.

**B.     Whether the August 12 Seizure and Detention Violated Clearly Established Law**

The defendants argue that they are entitled to qualified immunity from the claims arising out of the events of August 12 because "reasonable officials could disagree" on whether Simon consented to return to the station for questioning. Br. of Appellees at 44. The defendants, who by this time had realized that Simon was not their intended witness, suggest that an official reasonably could have believed that Simon agreed to return to the station because she wanted to help them persuade Dormoy to cooperate. They also stress that, when they collected Simon, there was no "display of badges, guns, force, or authority." *United States v. Adegbite*, 877 F.2d 174, 179 (2d Cir. 1989).

We are not persuaded. As above, our basic inquiry is whether, in light of the relevant body of law, the unlawfulness of the defendants' actions was clearly established when they acted. *See Wesby*, 138 S. Ct. at 589. We conclude that it was. It has been beyond debate since *Dunaway v. New York* that securing someone's presence at a police station with tactics of the kind used here is equivalent to conducting a formal arrest, for which probable cause to believe a crime has been committed is required. 442 U.S. 200, 216 (1979). In that case, the Supreme Court concluded that the petitioner had been seized where "he was taken from a neighbor's home to a police car, transported to a police station, and placed in an interrogation room" and was "never informed that he was 'free to go.'" *Id.* at 212. In another case, the Supreme Court concluded that a 17-year-old boy had been arrested where he "was awakened in his bedroom at three in the morning by at least three police officers, one of whom stated 'we need to go and talk,'" and "taken out in handcuffs, without shoes, dressed only in his underwear in January, placed in a patrol car, driven to the scene of a crime and then to the sheriff's offices, where he was taken into an interrogation room and questioned." *Kaupp*, 538 U.S. at 631. Along the same lines, we have held that a defendant was arrested where an agent came to the defendant's workplace, "request[ed]" that he "come

34

to the field office for questioning," conveyed "the sense of urgency and obligation," did not inform him that he could refuse, and denied the defendant's request to take his own car. *United States v. Ceballos*, 812 F.2d 42, 48 (2d Cir. 1987).

In this case, Simon, like the suspect in *Kaupp*, was taken from within her home, where Fourth Amendment protections are at their apex. *See Florida v. Jardines*, 569 U.S. 1, 6 (2013). And Simon was not merely asked to accompany the officers, like the arrestees in *Dunaway* and *Ceballos*, nor even told "we need to go and talk," like the one in *Kaupp*. Instead, Simon was told that she must accompany Alegre for questioning and reminded of the warrant for her arrest. There is no daylight between informing someone she is under arrest and "reminding" her that there is a warrant for her arrest and telling her that she must come to the police station. That the defendants did not flash badges or draw guns does not alter our conclusion. *See Dunaway*, 442 U.S. at 212. It was therefore clearly established in August 2008 that the defendants unlawfully arrested Simon without cause.

Accordingly, we conclude on this summary judgment record that the defendants violated Simon's clearly established Fourth Amendment right to be free of suspicionless arrests (and, as we previously explained, her right to have a

warrant for her arrest executed in conformity with its terms). The defendants are therefore not entitled to qualified immunity from claims arising out of the August 12 seizure and detention.

## CONCLUSION

For the foregoing reasons, the defendants are not entitled to qualified immunity from Simon's claims at the summary judgment stage. We emphasize, however, that we do not determine as a matter of law that the defendants' actions violated Simon's clearly established Fourth Amendment rights. That question will ultimately turn on a factfinder's resolution of disputes of material fact concerning the defendants' execution of the warrant, the clarification of the mistaken identity, and the degree to which Simon was a willing participant in the days' events, among others. We think that the legal analysis might look different if a factfinder determines that the defendants hewed to the terms of the material witness warrant, promptly learned of the mistaken identity, and obtained Simon's consent for all further interactions. But at this stage of the litigation, we must view the facts in the light most favorable to Simon, and on those facts, the defendants are not entitled to qualified immunity.

The judgment of the district court is **VACATED** and the case is

**REMANDED** for further proceedings consistent with this opinion.[7]

_____

[7] We decline Simon's request to reassign this case to a different district judge on remand, finding nothing in the record warranting that "extreme remedy." *United States v. City of New York*, 717 F.3d 72, 99 (2d Cir. 2013).