08-4748-pr
*Joe Burgos Vega v. Theresa Lantz, Jack Tokarz, and Frederick Levesque*

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

_____

August Term, 2008

(Argued:   July 16, 2009                                   Decided:   March 2, 2010)

Docket No. 08-4748-pr

_____

JOE BURGOS VEGA,

*Plaintiff-Appellee*,

– v. –

THERESA LANTZ, JACK TOKARZ, FREDERICK LEVESQUE,

*Defendants-Appellants*.

_____

Before: Sack and B.D. Parker, Circuit Judges, and Goldberg, Judge.[*]

_____

Defendants-appellants appeal from a judgment of the United States District Court for the

District of Connecticut (Dorsey, *J.*).  The district court found that officials from the Connecticut

---

[*] The Honorable Richard W. Goldberg, United States Court of International Trade, sitting by designation.

Department of Corrections improperly labeled the plaintiff-appellee as a sex offender in violation of the Due Process Clause of the Fourteenth Amendment. Reversed.

LYNN D. WITTENBRINK, Attorney Generals Office, State of Connecticut, Hartford, CT, *for Defendants-Appellants*.

WILLIAM K. PIOTROWSKI, Hartford, CT, *for Plaintiff-Appellee*.

BARRINGTON D. PARKER, *Circuit Judge*:

Defendants-appellants, who are prison officials, appeal from a judgment of the United States District Court for the District of Connecticut (Dorsey, *J.*), granting-in-part plaintiff-appellee Joe Burgos Vega's motion for summary judgment. Vega, a prison inmate, sued Connecticut prison officials alleging, among other things, that they violated his liberty interests and procedural due process rights arising under the Fourteenth Amendment by failing to afford him a hearing before assigning him an inmate classification that, in his view, was tantamount to classifying him as sex offender. The district court granted Vega summary judgment and injunctive relief on this claim and dismissed the remaining ones. *Vega v. Lantz*, No. 3:03-cv-2248, 2008 WL 3992651 (D. Conn. Aug. 25, 2008). For the reasons set forth below, we reverse.

## I. BACKGROUND

Vega is an inmate at the MacDougall-Walker Correctional Institution, under the custody of the Connecticut Department of Correction ("DOC" or "the Department"). Vega's incarceration resulted from his conviction for two counts of assault in the first degree in violation of Conn. Gen. Stat. § 53a-59 and one count of kidnapping in the second degree in violation of

2

Conn. Gen. Stat. § 53a-94. While the state also presented testimony that Vega committed sexual assault in the first degree in violation of Conn. Gen. Stat. § 53a-70 (a)(1), he was acquitted of that charge. The state trial court sentenced Vega to a total term of sixty years of incarceration.

Vega's convictions arose from acts he committed against a sixteen-year-old girl, with whom he had a sexual relationship, when he was twenty-nine-years old. The first violent act occurred during the fall of 1995, when he tore the victim's clothes, hit her, and forbade her from attending her high school classes. The violence then crescendoed. During a series of events during late 1995, Vega stabbed the victim, burned her with a cigarette, and carved the name "Joey" on her chest with a piece of glass. Then in early 1996, he locked the victim in a bedroom with her infant son, and, on the evening of January 7, entered the bedroom, stabbed the victim, beat her and cut her nipple off of her right breast before forcing her to swallow it.

Following his conviction, Vega entered the custody of the DOC. As is customary, Department officials assigned him both a "needs score," designed to assess what rehabilitative treatments were appropriate, and a "risk score," designed to assess his risk of dangerousness. The officials responsible for these assessments included the defendants-appellants Theresa Lantz, the Commissioner of Correction ("Commissioner"), Jack Tokarz, the former Deputy Commissioner and Fred Levesque, the Director of Inmate Classification and Population Management.

According to the Department's 2005 Objective Classification Manual, officials calculate a "needs score" by assigning point levels between 1 and 5 to inmates based on their medical needs, mental health needs, educational needs, vocational needs, substance abuse needs, community resource needs, and "Sexual Offense Treatment Needs" ("SOTN"). In calculating a

3

risk score, officials consider a number of factors including the inmate's risk of escape, the severity of the offenses, any history of violence, the length of the sentence, pending charges, disciplinary history and membership in a group that poses a security risk. An inmate with a SOTN score of 2 or higher may not receive a risk level score of 1 or 2 absent approval from the Commissioner.

When Vega was initially arrested in 1996, corrections officials assigned him a risk level of 4 and a SOTN score of 1. In June 1997 they reassigned him a SOTN score of 3, with a subcode of "U," to denote that this classification was unverified. Following his conviction, his risk score and SOTN score remained the same with one change: his SOTN subcode of "U" was changed to "V" for "verified." The Classification Manual describes persons with a SOTN score of 3 as individuals who "have a current conviction, pending charge or known history of sexual offenses involving physical contact with the victim(s)... The offenses may include coercion, manipulation, or exploitation."

In February 2001, Vega learned of his SOTN score and unsuccessfully requested reclassification on the ground that he had been acquitted of sexual assault. According to Vega, his classification as a sex offender exposed him to harassment from prison officials and other inmates, as well as a denial of access to various programs such as one that permitted him to tutor other inmates. Department officials dispute the allegations of harassment but acknowledge that they deemed it ill advised to permit Vega to serve as a tutor based, in part, on his high SOTN score.

In December 2003, Vega sued asserting various constitutional claims including violations of substantive and procedural due process, equal protection and the Eighth Amendment.

Eventually, Vega moved for summary judgment on his due process claims, contending that the state unconstitutionally classified him as a sexual offender despite the fact he has not been convicted of a sexual offense. This misclassification, he contended, deprived him of a federal constitutional liberty interest in not being falsely stigmatized and a state-created liberty interest in not being labeled as a sex offender absent a criminal conviction. The parties cross-moved for summary judgement. The district court granted summary judgment to Vega on his procedural due process claims. It reasoned that "being classified as a sex offender invokes a constitutionally protected liberty interest" and, therefore, Vega was entitled to a hearing before the Department labeled him a sex offender. *Vega*, 2008 WL 3992651, at *14. The court further reasoned that the Department's manuals "created a liberty interest in not being assigned an SOTN score on the basis of a charge for which an inmate has been acquitted," and transgressed the state-created liberty interest by labeling Vega a sex offender despite his acquittal for sexual assault in the first degree. *Id.* at * 16. Accordingly, the district court granted Vega injunctive relief requiring DOC officials to clear Vega's SOTN score until they provided him with a hearing to contest that classification. The district court granted the defendants qualified immunity and dismissed the remainder of the Vega's claims. This appeal followed.

## II. DISCUSSION

### A.

We review a grant of summary judgment under Rule 56 of the Federal Rules of Civil Procedure *de novo*. *Molinari v. Bloomberg*, 564 F.3d 587, 595 (2d Cir. 2009). The judgment will be upheld "only if the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issues of material fact and that the

judgment was warranted as a matter of law." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008)).

## B.

Vega alleged that DOC officials defamed him by branding him as a sex offender without due process. Generally, defamation is an issue of state, not of federal constitutional, law. *Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir. 2000) (citing *Paul v. Davis*, 424 U.S. 693, 699-701 (1976)). However, under limited circumstances, federal constitutional relief is available for defamation committed by government officials. *Paul*, 424 U.S. at 701-10; *see also Vitek v. Jones*, 445 U.S. 480, 493 (1980) (concluding that labeling an inmate mentally ill, and transferring him to a mental hospital without due process, wrongly stigmatized him) . Specifically, an action can be grounded in 42 U.S.C. § 1983 when that plaintiff can demonstrate "a stigmatizing statement plus a deprivation of a tangible interest." *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005); *see also Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).

To establish a "stigma plus" claim, a plaintiff must show (1) "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal citations and quotation marks omitted) (Sotomayor, *J.*) This state-imposed alteration of status or burden must be " in addition to the stigmatizing statement." *Id.* (emphasis omitted). "Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or

6

property interest protected by due process." *Id.* (citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)).

Vega contends, and the district court found, that by classifying him as an inmate with a SOTN score of 3, the state stigmatized him as a sex offender. For support, Vega relies on *Doe v. Dept. of Pub. Safety*, where we found that the publication of a Connecticut sex offender registry plainly stigmatized "the people listed on it insofar as it assert[ed] that they [were] persons convicted of crimes characterized by the State as sexual offenses." 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds* in *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 6-7 (2003). Although the Supreme Court reversed our conclusion that Connecticut's sex offender registry procedures violated due process, observing that a conviction for a sex offense was a prerequisite to one's inclusion in the registry, it continues to be the case that wrongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest. *See generally McKune v. Lile,* 536 U.S. 24, 32 (2002) (calling "[s]ex offenders ...a serious threat in this Nation.")*; see also Coleman v. Dretke*, 409 F.3d 665, 668 (5th Cir. 2005) (per curiam) (concluding that "by requiring [inmate] to attend sex offender therapy, the state labeled him a sex offender-a label which strongly implies that [the plaintiff] has been convicted of a sex offense and which can undoubtedly cause adverse social consequences.") (internal citations and quotation marks omitted); *Chambers v. Colorado Dep't of Corr.*, 205 F.3d 1237, 1242, 1244 (10th Cir. 2000) (concluding that the sex offender label is "replete with inchoate stigmatization" and enjoining Colorado from withholding earned time credit to a inmate who refused to admit to being a sex offender.); *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999) (per curiam) ("the stigmatizing effect of being classified as a sex offender constitutes a deprivation of liberty

under the Due Process Clause."); *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) ("We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a sex offender.").

Nonetheless, while it may be the case that, in certain circumstances, misclassification as a sex offender results in stigma plus, this possibility is of no particular assistance to Vega because he has not established a threshold requirement– the existence of a reputation-tarnishing statement that is *false*. *Codd v. Velger*, 429 U.S. 624, 627 (1977) ( per curiam ) (holding that plaintiff was not entitled to a hearing with respect to derogatory statements about him because "[n]owhere in his pleadings or elsewhere has [he] affirmatively asserted that the [statements in issue were] substantially false"); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980) ("[T]o constitute deprivation of a liberty interest, the stigmatizing information must be both false ... and made public ... by the offending governmental entity.") (alterations in original; citation and internal quotation marks omitted).

Vega has not alleged that the conduct underlying his conviction for assault– the removal of a teenage girl's nipple and the forcing her to swallow it– did not occur. Nor has Vega alleged that Department officials were unreasonable in classifying this conviction a "sexual offense" that involved "physical conduct," the requirements for a SOTN score of 3 under the operative Classification Manual.[1] Since Vega did not allege falsity, he was not entitled to relief on his

---

[1]*See also* Conn. Gen. Stat. §§ 53a-65(3), (8) (state criminal code defining "sexual contact" as contact with the "intimate parts" of a person, which include "the genital area..., groin, anus..., inner thighs, buttocks, or breasts."); 18 U.S.C. § 2246(3) (federal criminal code defining "sexual contact" as the "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, degrade, or arouse or gratify the sexual desire of any person.").

stigma plus due process claim and, accordingly, the district court erred in affording him injunctive relief.

C.

Vega also asserts in his § 1983 claim a due process violation arising from the deprivation of a state-created liberty interest. *Welch v. Bartlett*, 196 F.3d 389, 392-393 (2d Cir. 1999). To establish such a claim, a prisoner must first demonstrate that state law creates such a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 479-81 (1995). A state-created liberty interest "arises when state statutes or regulations require, in language of an unmistakably mandatory character, that a prisoner not suffer a particular deprivation absent specified predicates." *Welch*, 196 F.3d at 392 (internal citations and quotation marks omitted). To be actionable, the liberty interest must subject the prisoner to "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. An inmate "who experiences a deprivation arising under mandatory rules has no actionable due process claim if other prisoners experience approximately the same deprivation in the ordinary administration of the prison with sufficient regularity that such deprivation is typical." *Welch*, 196 F.3d at 392.

Vega contended that he had a liberty interest in not being assigned the SOTN score he received based on acquitted conduct. The district court concluded that an earlier, no-longer-operative Classification Manual created such an liberty interest. The Manual stated that "nolled, dismissed, or withdrawn information, which is part of another crime, may be used to determine needs scores based upon the description of the crime from police reports, [pre-sentence investigation reports], or other reliable investigative reports." Acquitted crimes, the district court observed, are not on that list, supporting, by negative inference, the conclusion that they should

9

not count. The district court further concluded that under the earlier manual, "[n]o charge for which an offender has been found not guilty or the charge nolled, or dismissed, may be used to determine any risk score." The court found that the disregard by DOC officials of this language resulted in atypical hardships in the form of denial of participation in certain treatment programs and threats from other inmates. The district court's analytic approach runs up against the Supreme Court's admonition in *Sandin* regarding the dangers of such negative inferences: "[W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause." 515 U.S. at 483.

More to the point, we believe the district court relied on the wrong manual. On his liberty interest claim, Vega sought only prospective injunctive relief, not monetary damages. Consequently, only the current regulations, not the older ones, are relevant. The current regulations provide that "nolled, acquitted, dismissed or withdrawn information, which is part of another crime, may be used to determine needs scores based upon the description of the crime from police reports, [pre-sentence investigation reports], or other reliable investigative reports." Since the current regulations do not prohibit prison officials from considering acquitted conduct when assigning a needs score, they do not support the existence of a liberty interest.

Finally, the record strongly indicates that Vega's SOTN score would be a 3 even if he had never been charged with, and acquitted of, sexual assault in the first degree. DOC officials averred that Vega's SOTN score would be remain a 3, even absent the acquittal for sexual assault, because he was convicted of "Assault in the First Degree... on the basis of the mutilation and amputation of his minor victim's nipple." Vega has contradicted neither the conduct

10

supporting this conviction, nor the Department's sworn averment that this convicted conduct sustains Vega's SOTN score "standing alone." As the district court noted, "there are numerous reasons why the crimes for which Vega was convicted could be found to reflect problematic sexual attitudes and behavior which justify labeling his crimes 'sexual offenses,' not the least of which is the law's consideration of a breast as a 'sexual organ.'" *Vega*, 2008 WL 3992651, at *15 (citing Conn. Gen.Stat. §§ 53a-65(3), (8)). Vega has identified no facts he could potentially elicit in a hearing that would undermine the Department's determination that his convicted conduct is reasonably termed a "sexual offense" under the operative classification manual.

If Vega had not been convicted of amputating a part of a sixteen year old girl's body that is classified as a sexual organ under Connecticut law, this may well have presented a different case. Vega, however, does have such a conviction. And prison officials are under no constitutional obligation to blind themselves to reality in assessing Vega's needs while he is in their care.

### III. CONCLUSION

The judgment of the district court is reversed. The case is remanded so that the district court may enter judgment in favor of the defendants.