18-1298-cv
*Mudge v. Zugalla, Harder*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2018

(Argued: March 28, 2019      Decided: September 12, 2019)

Docket No. 18-1298-cv

RANDY A. MUDGE,
*Plaintiff-Appellee,*

v.

ANNE M. ZUGALLA, DANIEL HARDER,
*Defendants-Appellants.*\*

Before:      SACK, HALL, AND DRONEY, *Circuit Judges*.

The plaintiff-appellee, Randy Mudge, was terminated from his position as

a substitute teacher in the Middleburgh Central School District, a public-school

district located in Middleburgh, New York, after the defendants-appellants,

Anne Zugalla and Daniel Harder, employees of the New York State Department

of Education, informed the School District's superintendent that they had opened

an ethics investigation into Mudge's conduct.  The plaintiff brought suit in the

---

\* The Clerk of Court is respectfully directed to amend the caption as set out
above.

United States District Court for the Northern District of New York, pursuant to

42 U.S.C. § 1983, alleging in relevant part procedural due process and stigma-

plus claims related to the termination of his employment. The defendants

asserted a qualified immunity defense. The district court (David N. Hurd, *Judge*)

denied the defendants' motion for summary judgment, but did not address the

defendants' qualified immunity defense. On a motion for reconsideration, the

district court, addressing that issue for the first time, concluded that the

defendants were not entitled to qualified immunity because the plaintiff had

demonstrated that the defendants had violated clearly established law. On

appeal, the defendants argue that the district court erred in denying their motion

for summary judgment based on qualified immunity. We agree. With respect to

the plaintiff's due process claim, we conclude that Mudge has failed to establish a

clearly established right to the meaningful opportunity to utilize his teaching

license. He has also failed to demonstrate that the defendants' conduct was

sufficiently stigmatizing under clearly established law so as to give rise to a

"stigma-plus" claim. The defendants are, therefore, entitled to qualified

immunity, and the district court erred in denying summary judgment as to both claims. The judgment of the district court is therefore:

REVERSED and REMANDED with instruction.

JENNIFER L. CLARK (Barbara D. Underwood, Andrea Oser, *on the brief*), New York State Office of the Attorney General, Albany, NY, *for Defendants-Appellants*,

BRIAN D. DEINHART (Phillip G. Steck, *on the brief*), Cooper Erving & Savage LLP, Albany, NY, *for Plaintiff-Appellee.*

SACK, *Circuit Judge*:

The plaintiff-appellee, Randy Mudge, is a physical education teacher and school administrator licensed by New York State. In 2008, Mudge was investigated and charged by the New York State Education Department for committing acts of sexual misconduct with former students, resulting in a one-year suspension of his state licenses.

Mudge subsequently obtained employment as a substitute teacher in the Middleburgh Central School District. Shortly thereafter, however, defendants-appellants, Anne Zugalla and Daniel Harder, employees of the New York State Department of Education, informed the School District's superintendent that they were instituting an investigation into Mudge's conduct. Although the

defendants ultimately concluded that there were no grounds for an investigation, the plaintiff was terminated from his teaching position.

The plaintiff brought suit against the defendants pursuant to 42 U.S.C. § 1983, alleging procedural due process and so-called "stigma-plus" claims related to the termination of his employment. The defendants asserted a qualified immunity defense.

The district court denied the defendants' motion for summary judgment but did not address the defendants' qualified immunity defense. On a motion for reconsideration, the district court, addressing that issue for the first time, concluded that the defendants were not entitled to qualified immunity. On appeal, the defendants argue that the district court erred in denying their motion for summary judgment based on qualified immunity. For the reasons that follow, we agree. The plaintiff's procedural due process claim cannot stand because he has failed to establish a clearly established right to the meaningful opportunity to utilize his teaching license. He has also failed to demonstrate that the defendants' conduct was sufficiently stigmatizing under clearly established law so as to give rise to a "stigma-plus" claim. We therefore reverse the judgment

4

and remand the case with instruction to the district court to enter summary

judgment in favor of the defendants.

## BACKGROUND

*General Factual Background*

The plaintiff-appellant Randy Mudge is a physical education teacher and

school administrator licensed in New York State.[1]  He brings this suit against two

employees of the New York State Education Department (the "NYSED"): Anne

Zugalla, a senior professional conduct investigator, and Daniel Harder, a senior

attorney in the Office of School Personnel Review and Accountability ("OSPRA").

OSPRA is the department within the NYSED charged with investigating

allegations concerning the moral character of New York State teaching license-

holders.

From 1987 to 2010, the plaintiff worked in the Hunter-Tannersville Central

School District ("HTC") as a physical education teacher and athletic coach.  In

2006, HTC received complaints that some twenty years before, the plaintiff had

engaged in sexual behavior with two students.  The school reported these

---

[1] Because this case was decided on a motion for summary judgment, we view the facts in the light most favorable to the non-moving party—in this case, the plaintiff.  *Anthony v. City of New York*, 339 F.3d 129, 134 (2d Cir. 2003).

complaints to OSPRA.  Between 2006 and 2008, OSPRA prosecuted the plaintiff

in a Part 83 proceeding, a hearing before an administrative panel to determine

whether a claim of misconduct against a teaching-license holder raises a

reasonable question of moral character.  *See* 8 NYCRR § 83.1 *et seq.*  Defendant

Harder was the OSPRA attorney responsible for the plaintiff's prosecution.  The

administrative panel determined that, in 1989 and 1992, Mudge "groomed" two

students for sexual activity while they were in high school and had sexual

relationships with them shortly after they graduated.  It recommended a one-

year suspension of the plaintiff's teaching licenses.  Mudge served his suspension

from May 2009 to May 2010.  He subsequently resigned from his position at

HTC.

In the autumn of 2011, the plaintiff applied for a middle school principal

position in the Middleburgh Central School District ("Middleburgh").  The

application did not require Mudge to report his prior teaching suspension.  The

interview committee became aware of it nonetheless as a result of an online

search by committee members into each of the candidates, including Mudge.  As

a result, Middleburgh's superintendent, Michele Weaver, informed Mudge that

he would not be considered for the position.  She subsequently had a "full and

frank" conversation with him about his suspension. Plaintiff Affidavit in Response to Summary Judgment at 2 (Joint Appendix ("J.A.") 300 ¶ 9). Thereafter, Mudge applied for a position as a Middleburgh substitute teacher. In December 2011, the Middleburgh Board of Education ("the Board") hired him notwithstanding its knowledge of his prior suspension. Mudge began serving as the substitute for a physical education teacher who had taken a medical leave of absence.

In early 2012, Harder, the OSPRA lawyer who had prosecuted the Part 83 proceeding that resulted in Mudge's suspension, received a phone call from a member of the public, unidentified in the record, informing him that the plaintiff had obtained employment at Middleburgh. Harder thought that a failure to truthfully reveal prior discipline or professional certificate history raised a question of moral character that could subject a license-holder to a Part 83 proceeding. *See* 8 NYCRR § 83.1 *et seq.*; Harder Declaration at 46 ¶ 22 (J.A. 46). Harder therefore decided to review Mudge's employment application to Middleburgh to see whether that information had been accurately reported. To do so, he requested that Investigator Zugalla acquire a copy of Mudge's Middleburgh employment application.

7

On February 2, 2012, Zugalla telecopied a form letter (the "February 2012 Letter") to Superintendent Weaver seeking the plaintiff's Middleburgh employment application.  In relevant part, the letter stated that the NYSED had "commenced an investigation" against Mudge.  February 2012 Letter at 2 (J.A. 172).  It continued:

> Pursuant to Department authority to investigate such matters as set forth in 8 NYCRR §83.2, I am requesting that you provide this office with a complete copy of [Middleburgh's] investigation (audit) pertaining to Mr. Mudge including but not limited to: employment status and length of employment (start and end dates), application for employment, and resume.

*Id.* (emphasis omitted).  Later that day, Harder received a copy of Mudge's employment application from Middleburgh.  Harder noted that the application had not, in fact, required the plaintiff to report his discipline or certificate history.  Harder therefore concluded that there was no ground for an investigation into Mudge's conduct.  But the NYSED did not inform Middleburgh that they would not be pursuing the investigation further.

Although Superintendent Weaver was aware of Mudge's previous suspension, the report that the NYSED was initiating an investigation into his conduct worried her.  She reported the matter to the Board.  She also asked

8

Mudge whether he was, at the time, under investigation by the NYSED.  Mudge responded that he had no knowledge of such an investigation.  At about the same time, Zugalla also called Superintendent Weaver to question Middleburgh's decision to employ Mudge, plainly suggesting that because of his suspension, the plaintiff should not have been hired.

On February 10, 2012, Superintendent Weaver filed a request with the NYSED under New York's Freedom of Information Law, N.Y. Public Officers Law §§ 84-90, for copies of "all documents regarding complaints, investigations and/or determinations of any misconduct or alleged misconduct" pertaining to the plaintiff.  Defendants' Statement Pursuant to Rule 7.1(a)(3) at 11 ¶ 72 (J.A. 132).  In late February, Superintendent Weaver received a response to her request from the NYSED, which included documents pertaining to the plaintiff's initial suspension.  It contained no information about a subsequent investigation.

In June 2012, the Board appointed Mudge as a permanent substitute teacher, a title that applied retroactively to the start of his employment. Nevertheless, when the physical education teacher he was covering for requested an extension of her leave, requiring the Board to hire a permanent substitute teacher for the subsequent school year, Mudge was not given the opportunity to

9

interview to continue in the position. In August 2012, the Board approved a list of proposed substitute teachers for the 2012-13 school year, which included Mudge. But the following month, in a public session, the Board unanimously voted to remove Mudge from the list. There had been no criticism of Mudge's performance before his termination. There is persuasive evidence in the record, however, that pressure from the NYSED was a significant factor in the Board's decision to remove him.

In October 2012, an article appeared in a local newspaper reporting that Middleburgh had removed "ex-teacher" Mudge from the substitute-teacher list. David Avitabile, *MCS Removes Ex-Teacher from Substitute List*, SCHOHARIE TIMES JOURNAL, Oct. 3, 2012, at 9 (J.A. 397). It linked Mudge's removal from the substitute-teacher list to his earlier suspension for sexual misconduct but made no mention of a new or pending investigation into his behavior. Since the publication of that article, the plaintiff has been unable to obtain employment as a substitute teacher, teacher, or administrator in the State of New York or elsewhere, so far as the record discloses. Mudge has been told by prospective public-school employers that they would not hire him because of the negative effect on public opinion engendered by that article.

10

*Procedural History*

In July 2013, Mudge filed a civil rights action for damages and injunctive relief, pursuant to 42 U.S.C. § 1983, in the Northern District of New York against defendants Harder and Zugalla, as well as additional individual and institutional defendants who are not parties to this appeal.[2]  In March 2015, he filed an amended complaint, the operative pleading with respect to this appeal, asserting two causes of action related to his Middleburgh employment: (1) a procedural due process claim alleging that the defendants denied him the meaningful opportunity to use his teaching license; and (2) a "stigma-plus" claim alleging that the defendants' statements to Middleburgh harmed his reputation, led to his termination, and continue to prevent him from obtaining reemployment.  In June 2015, the defendants filed a motion for summary judgment, arguing that they were entitled to qualified immunity as to both claims as a matter of law.

In January 2016, the district court (David N. Hurd, *Judge*) denied summary judgment for the defendants on the plaintiff's Middleburgh claims.  The court concluded that the plaintiff had sufficiently established a procedural due process claim.  It noted that a teaching license "entitles its holder to a 'meaningful

---

[2] All of Mudge's claims, aside from those arising from his employment at Middleburgh, were dismissed by the district court and have not been appealed.

opportunity to seek employment pursuant to the license.'" *Mudge v. Zugalla*, No. 13 Civ. 891, Dkt. #59, at 7 (N.D.N.Y. Jan. 6, 2016) (quoting *Lombard v. Bd. of Educ.*, 645 F. Supp. 1574, 1577 (E.D.N.Y. 1986)). It further reasoned that the "vague wording" of the February 2012 Letter coupled with the defendants' failure to inform Middleburgh that they had concluded their investigation "could easily [have] been interpreted as an indication of new misconduct" engaged in by Mudge. *Id*. at 10. The court therefore concluded that a trier of fact could find that the defendants' actions "negatively impacted Mudge's employment status" and "denied [him] a meaningful opportunity to utilize his teaching license without due process." *Id.* at 11.

The district court also concluded that the plaintiff had established a "stigma-plus" claim. The court decided that the defendants' statements in the February 2012 Letter were stigmatizing because they "easily might have been interpreted as an allegation of new misconduct on the part of plaintiff unrelated to his prior suspension" and "could be viewed as sufficient[ly] derogatory to injure plaintiff's reputation." *Id.* at 15. It further reasoned that the plaintiff had demonstrated that the stigmatizing statements were false, publicized, and temporally proximate to his dismissal. The district court concluded that a trier of

fact could find that the plaintiff's termination resulted from these statements. It did not address the defendants' qualified immunity defense as to either claim.

In January 2016, the defendants filed a motion for reconsideration as to both claims on the ground that the district court "completely overlooked" their qualified immunity defense. Dist. Ct. Dkt. #60-2 at 2. In March 2018, the district court denied the defendants' motion in its entirety. The court concluded that "[a]t the time of Mudge's employment at the Middleburgh District, it was well established that a state actor could not interfere with an individual's teaching license." *Mudge v. Zugalla*, 13 Civ. 891, Dkt. #70, at 11 (N.D.N.Y. Mar. 31, 2018). On that basis alone, the district court concluded that the defendants "would have been aware that they were violating plaintiff's constitutional rights if they did interfere." *Id*. The district court further determined that the defendants' decision to "interject themselves into [Mudge's] existing employment with the Middleburgh District," by sending the February 2012 Letter, was not "objectively reasonable." *Id*. Accordingly, the district court denied the defendants' motion for reconsideration.

**DISCUSSION**

On appeal, the defendants argue that the district court erred by deciding that they were not entitled to qualified immunity. Specifically, they argue that even accepting Mudge's allegations as true, as we and the district court must at this stage of the proceedings, he has failed to allege sufficiently that they violated his clearly established rights so as to defeat a qualified immunity defense. For the following reasons, we agree. The plaintiff has failed to establish that the right to the meaningful use of his teaching license was clearly established at the time. He has also failed to demonstrate that the defendants' conduct was sufficiently stigmatizing under clearly established law so as to give rise to a "stigma-plus" claim. We therefore reverse the judgment and remand the case with instruction to the district court to enter summary judgment in favor of the defendants.

### I. Jurisdiction and Standard of Review

We have jurisdiction to review the denial of qualified immunity on interlocutory appeal "to the extent it can be resolved on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." *Terebesi v. Torreso*, 764 F.3d 217, 222 (2d Cir. 2014) (internal quotation marks omitted). We review a district

court's decision on a motion for summary judgment *de novo* to determine whether there was "no genuine dispute as to any material fact, such that the moving party was entitled to judgment as a matter of law." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016). We do so "resolving all ambiguities and drawing all factual inferences in plaintiff['s] favor as the non-moving party." *Anthony v. City of New York*, 339 F.3d 129, 134 (2d Cir. 2003).

## II.    Qualified Immunity

Qualified immunity protects public officials from legal actions brought under 42 U.S.C. § 1983 if their behavior does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The issues on qualified immunity are: (1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." *Gonzales v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (internal quotation marks omitted). We are "permitted to exercise [our] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light

15

of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For a right to be clearly established, its "contours . . . must be sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  That generally entails looking to "Supreme Court decisions, our own decisions, and decisions from other circuit courts."  *Simon v. City of New York*, 893 F.3d 83, 92 (2d Cir. 2018); *see also Pabon v. Wright*, 459 F.3d 241, 255 (2d Cir. 2006) ("When neither the Supreme Court nor this court has recognized a right . . . the holdings of district courts cannot act to render that right clearly established within the Second Circuit.").

*1. Procedural Due Process Claim*

The defendants argue that the district court erred in denying their qualified immunity defense as to the plaintiff's procedural due process claim. We agree.

Multiple district and state courts have expressed the view that New York State recognizes that a teaching-license holder is entitled to a "meaningful opportunity" to seek employment pursuant to that license, and that denial of

16

such an opportunity constitutes a constructive revocation without due process.

*See Rogovin v. N.Y. City Bd. Educ.*, No. 99 Civ. 3382 (ERK), 2001 WL 936191, at *4,

2001 U.S. Dist. LEXIS 11923, at *13 (E.D.N.Y. Aug. 17, 2001) (explaining that

"New York State recognizes that a teaching license entitles its holder to a

meaningful opportunity to seek employment pursuant to that license"); *accord*

*Lombard v. Bd. of Educ. of City of New York*, 645 F. Supp. 1574, 1578-79 & n. 5

(E.D.N.Y. 1986) (citing cases).  The plaintiff contends that the defendants violated

his procedural due process rights by denying him a meaningful opportunity to

seek employment pursuant to his teaching license.[3]

Assuming *arguendo* that a constitutional violation did, in fact, take place,

the plaintiff has failed to establish that the right was clearly established at the

time of the defendants' conduct.  The constitutional right to the meaningful use

of a teaching license has not been recognized by the Supreme Court or by this

Court; it has, as noted, been adopted by federal-district and state courts only.  In

the qualified immunity context, that is insufficient to constitute "clearly

---

[3] Mudge did not otherwise have a property interest in his Middleburgh
employment because he was an at-will employee.  *See Abramson v. Pataki*, 278
F.3d 93, 99 (2d Cir. 2002) ("Employees at will have no protectable property
interest in their continued employment.").

established" law.  *Pabon*, 459 F.3d at 255; *Simon*, 893 F.3d at 92.  And although

state law may create property interests, it cannot, of its own force, create a clearly

established substantive *federal* constitutional right.  *See Memphis Light, Gas and*

*Water Div. v. Craft*, 436 U.S. 1, 9 (1978) ("Although the underlying substantive

interest is created by an independent source such as state law, federal

constitutional law determines whether that interest rises to the level of a

legitimate claim of entitlement protected by the Due Process Clause." (internal

quotation marks omitted)).[4]

Because the plaintiff has failed to establish that the defendants violated his

clearly established due process right, the district court erred in denying the

---

[4] The plaintiff cites *Palkovic v. Johnson*, 281 F. App'x 63, 64 (2d Cir. 2008), a non-precedential summary order, for the proposition that "reinitiating removal proceedings against a teacher after failing to achieve termination in [a] prior proceeding, where no new grounds for termination [a]re identified, create[s] a legally cognizable due process violation."  Pl. Br. 17.  But even were we to treat *Palkovic* as persuasive and accept the plaintiff's characterization of its holding, it still would not support Mudge's argument in this regard.  That is because *Palkovic* did not involve circumstances "similar," *White v. Pauly*, 137 S. Ct. 548, 552 (2017), to those presented here.  There, the plaintiff alleged that the defendants initiated three proceedings, based upon the same evidence, in order to achieve their desired result.  *Palkovic*, 281 F. App'x at 65-66.  Here, by contrast, the defendants did not attempt to relitigate the plaintiff's first administrative proceeding, in which they prevailed.  Instead, they were considering whether to charge the plaintiff with a wholly separate offense: the failure to report a prior suspension.

defendants qualified immunity as to that claim and declining to grant summary judgment with respect to it.

   *2. Stigma-Plus Claim*

   The defendants also argue that the district court erred in denying them qualified immunity as to the plaintiff's "stigma-plus" claim. Here too, we agree with them.

   Under "limited circumstances," government employees may have a cause of action for defamation in the course of, or in connection with, dismissal from government employment. *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010). To prevail on such a "stigma-plus" claim, a plaintiff must demonstrate "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotation marks omitted). The relevant state-imposed burden must be separate from the stigmatizing statement and may take the form of a "deprivation of a plaintiff's property" or the "termination of a plaintiff's government employment." *Id.* While there is "no rigid requirement [] that both the 'stigma' and the 'plus' must

19

issue from the same government actor or at the same time," they must be "sufficiently proximate." *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005). And the statement "must be sufficiently public to create or threaten a stigma." *Id.* at 87.

An alleged statement may satisfy the "stigma" requirement if it "call[s] into question plaintiff's good name, reputation, honor, or integrity." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (internal quotation marks and citation omitted). "Statements that 'denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession' may also fulfill this requirement." *Id.* (*quoting Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996)); *see also Huntley v. Cmty. Sch. Bd. of Brooklyn*, 543 F.2d 979, 985 (2d Cir. 1976) (impairment of future employment found where stigmatizing statements made it "unlikely that [the plaintiff] would ever have a chance to obtain another supervisory position in the public schools or elsewhere"), *cert. denied*, 430 U.S. 929 (1977).

Mudge contends that the defendants' statement that they had "opened an investigation" into his conduct "necessarily call[ed] into question his 'good name,

20

reputation, honor, or integrity'" because it falsely "suggest[ed] that [he] was sexually predating on students." Pl. Br. 24-25. He further argues that the defendants' statement was sufficiently stigmatizing because it "impugn[ed] [his] moral character" and, therefore, "effectively put a significant roadblock in [his] continued ability to practice his [] profession" because of the "nature of the statement . . . combined with the wide publicity that [it] received" when it was repeated by the Board in a public session. Pl. Br. 24-25. That publicity led to publication in a local newspaper of an article about his suspension history, which he argues continues to prevent him from gaining reemployment as an educator.

Again, the plaintiff may or may not have made out a constitutional claim, but he has in any event failed to establish that the defendants' conduct violated a clearly established right. At the time of the defendants' alleged violation, at least, it was not clearly established that notice of the mere existence of an internal investigation into a license holder's behavior, without some detail as to the possible misconduct being investigated, could give rise to a stigma-plus claim. *See McGuire v. Warren*, 207 F. App'x 34, 37 (2d Cir. 2006) (summary order) (concluding that "innuendo," even if it carries a "false implication," cannot support a stigma-plus claim); *see also Sadallah*, 383 F.3d at 38 (plaintiff asserting

21

stigma-plus claim must show "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false") (internal quotation marks omitted) . The plaintiff has demonstrated at most that the defendants interfered with his relationship, actual and potential, with a *single* employer: Middleburgh. That falls decidedly short of demonstrating under clearly established law that the defendants created a significant roadblock to his ability to practice his profession. *See Donato*, 96 F.3d at 630-31; *see also Bishop v. Wood*, 426 U.S. 341, 348 (1976) ("[I]t would stretch the [liberty interest] concept to[o] far to suggest that a person is deprived of liberty when he simply is not rehired in one job but remains as free as before to seek another." (citing *Bd. of Reagents v. Roth*, 408 U.S. 564, 575 (1972) (internal quotation marks omitted)). Further, although the defendants' statement was repeated by the Board in a public session, the plaintiff fails to explain how the ensuing article, and the statements therein, are "sufficiently proximate" to the actions of the defendants under clearly established law. *Velez*, 401 F.3d at 89.

The article in question does not repeat the defendants' allegedly stigmatizing statements; indeed, it makes no mention of any new or ongoing investigation of Mudge's conduct. Thus, even if Mudge had shown facts making

22

out a stigma-plus claim, it was objectively reasonable for the defendants to conclude, in light of then existing law, that their conduct was lawful at the time they engaged in it. The defendants are, therefore, entitled to qualified immunity as to the plaintiff's stigma-plus claim and summary judgment in the defendants' favor on that claim should, on remand, be granted too.

## CONCLUSION

We are not unsympathetic to the plaintiff, who may have been unfairly treated by the defendants with unfortunate results. But for the reasons set forth above, their behavior did not give rise to a cause of action under section 1983 that could survive the defendants' qualified immunity defense. We therefore REVERSE the judgment of the district court, and REMAND the matter to the district court, directing it to enter summary judgment in favor of the defendants.