Ford v. Deacon

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of November, two thousand nineteen.**

**PRESENT:**

> **RICHARD C. WESLEY,**
> **DEBRA ANN LIVINGSTON,**
> **JOSEPH F. BIANCO,**
> *Circuit Judges.*

_____

**Corey Ford,**

> *Plaintiff-Appellant*,

> **v.**                                                                18-3269

**Sgt. R. Deacon, Shawangunk Correctional Facility, C.O. J. Phillips, Shawangunk Correctional Facility, AKA T. Phillips, Christopher Miller, Superintendent, Great Meadow Correctional Facility, R. Eastman, Deputy Superintendent of Security, Great Meadow Correctional Facility, Sgt. C. Fraser, Great Meadow Correctional Facility, C.O. Daniel McClenning, Great Meadow Correctional Facility,**

> *Defendants-Appellees*,

**Albert Prack, Director of Special Housing Unit (SHU), Anne M. McGrath, Assistant**

**Commissioner of Movement and Control of DOCCS, Veron J. Fonda, Director of Inspector General's Office of DOCCS, AKA Vernon J. Fonda, E. Demo, Investigator of the Inspector General's Office of DOCCS,**

*Defendants*.

_____

**FOR PLAINTIFF-APPELLANT:**    Corey Ford, *pro se*, Auburn, NY.

**FOR DEFENDANTS-APPELLEES:**    Barbara D. Underwood, Solicitor General, Victor Paladino, Brian D. Ginsberg, Assistant Solicitors General, *for* Letitia James, Attorney General of the State of New York, Albany, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*; Dancks, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Corey Ford, *pro se*, sued corrections officers and prison officials under 42 U.S.C. § 1983, alleging violations of the First, Eighth, and Fourteenth Amendments. He generally alleged that corrections officers retaliated against him for assaulting another corrections officer and for filing grievances by labeling him a gang member in order to keep him in the Special Housing Unit ("SHU"); assigning him to prison cells that were kept in poor condition; and throwing away his legal papers. He also asserted procedural due process violations in relation to his placement in administrative segregation. A magistrate judge recommended granting summary judgment in favor of the defendants and the district court adopted the recommendation. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

2

We review a grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013) (per curiam). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

**I.      First Amendment Retaliation**

"To prove a First Amendment retaliation claim under Section 1983, a prisoner must show . . . (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quotation marks and citation omitted). On appeal, Ford asserts that the December 2013 search of his cell and subsequent labeling of him as a Bloods gang member constituted retaliation for filing grievances against Sargent Richard Deacon.

Ford failed to offer sufficient evidence showing that the December 2013 search was conducted in retaliation for the grievances he filed against Deacon. Deacon denied ordering any search of Ford's cell. Ford did not offer any evidence establishing what role, if any, Deacon had in the December 2013 search, and a contraband form showed that other corrections officers conducted the search. The only possible connection between the two events is temporal proximity: Ford filed a grievance against Deacon in August 2013 and the search occurred four months later. But temporal proximity alone, particularly where the time lapse is four months, is insufficient to establish a retaliation claim. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (noting that

3

if the only evidence of causal connection was temporal proximity or circumstantial evidence, "we might be inclined to affirm the grant of summary judgment based on the weakness of Colon's case"); *Williams v. King*, 763 F. App'x 36, 38–39 (2d Cir. 2019); *Neron v. Cossette*, 419 F. App'x 123, 124 (2d Cir. 2011).

Although Ford asserted that Deacon later obtained a greeting card seized from his cell and labeled him a gang member as a result, there is little connecting this act to Ford's August 2013 grievance because Deacon was not involved in the search and would have no control over what items were confiscated. Further, Ford's ultimate allegation—that Deacon sought to label Ford as a gang member to keep him in the SHU—is not supported by the record. Ford's later placement in administrative segregation was not only based on Deacon's statement that Ford was a gang member, but also based on confirmation from an investigator in DOCCS's central office, and Ford's overall disciplinary history. Ford therefore failed to establish that his ultimate label as a gang member and placement in segregation were connected to his grievances against Deacon. *See Scott v. Coughlin*, 344 F.3d 282, 287–88 (2d Cir. 2003) (First Amendment retaliation claim fails where defendants can show that the alleged retaliatory action would have occurred without the retaliatory motive).

## II. Procedural Due Process

### A. Administrative Segregation Hearing

To state a claim under § 1983 for denial of due process arising out of an administrative segregation hearing, a plaintiff must show both that he: (1) possessed an actual liberty interest; and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004). "To be actionable, the liberty interest must subject the prisoner

to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Even assuming that Ford has a liberty interest based on his placement in administrative segregation, he received adequate due process at his hearing.

Prior to placing a prisoner in administrative segregation, prison officials must provide "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to [administrative segregation,] although not necessarily a full hearing." *Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017) (quotation marks omitted). Once this has occurred, officials need only conduct an informal review to determine whether segregation is justified, and the final decision may rest on "'purely subjective evaluations and on predictions of future behavior.'" *Id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 474 (1983)). Here, the record reflects that Ford was given both notice of the charges and an opportunity to be heard on the segregation recommendation at the hearing.

Ford primarily asserts that he did not receive adequate due process because Deputy Superintendent Rodney Eastman, the hearing officer, failed to (1) permit Ford access to emails sent by Deacon and a DOCCS inspector claiming that Ford was a gang member and (2) have Deacon and the DOCCS investigator testify. But due process did not require Eastman to provide access to the emails sent by Deacon. Ford received notice of the administrative segregation recommendation, including the fact that Sergeant Colin Fraser recommended it in part based on his gang membership and his history of violence. Although Ford did not receive the emails forming the basis of the gang membership allegation prior to the hearing, the notice was sufficient for him to respond to the recommendation and ask questions of Fraser, who did testify. *See Taylor v.*

5

*Rodriguez*, 238 F.3d 188, 193 (2d Cir. 2001) (notice is sufficient when it includes specific facts to enable a prisoner to respond them). And Fraser's testimony at the hearing established that Deacon and the investigator were the source for Fraser's conclusion that Ford was a gang member. The emails were not necessary to obtain this information. Finally, Ford never requested that any witnesses testify. Because the notice was sufficient for Ford to respond to the charges and he had the opportunity to learn the basis of Fraser's belief, Ford was afforded sufficient notice.

Ford further argues that Eastman's decision was arbitrary because no evidence had been offered to support it. But this argument is meritless. Eastman's decision was based on a review of Ford's disciplinary history, his behavior, and Fraser's testimony. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (To meet "the minimum requirements of procedural due process," a prison disciplinary decision must be "supported by some evidence in the record." (quotation marks and citation omitted)).

### B. Administrative Segregation Reviews

Once a prisoner is placed in administrative segregation, prison officials must conduct a periodic review of the confinement to determine whether the prisoner remains a security risk. *Proctor*, 846 F.3d at 609. Ford argues that he was denied appropriate reviews because the first review occurred 105 days after his placement in administrative segregation, rather than the 60 days provided in DOCCS regulations. But a mere violation of state regulations does not amount to a denial of due process under the Constitution. *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987). Moreover, Ford remained in administrative segregation following his first review. *See DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 790 (2d Cir. 1999) ("[P]roof of prejudice is

6

generally a necessary but not sufficient element of a due process claim." (quotation marks and citation omitted)).

Ford further argues that he did not receive an impartial review because Eastman, who initially placed him in administrative segregation, served on the review committee. But there was no conflict of interest because the purpose of the periodic reviews was not to review Eastman's initial decision, but rather to determine if continued confinement in administrative segregation was warranted. *See* 7 N.Y.C.R.R. § 301.4(d). Therefore, Ford did not establish a due process violation based on the periodic reviews.

### III. Conditions of Confinement

To state an unsafe conditions of confinement claim, "the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. . . . [and] that the defendant prison officials possessed sufficient culpable intent." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). A prison official possesses "culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Id.*

Even assuming that Ford offered sufficient evidence to show an objective risk of harm caused by the conditions in his cell, Ford failed to show that Eastman, Fraser, or Superintendent Christopher Miller had culpable intent. All three defendants stated that they had no involvement in Ford's cell assignment and had no knowledge of or responsibility for cell conditions. Ford offered no evidence to contradict their statements. At most, Ford argued that Miller received Ford's grievances about his cell conditions, but this is not sufficient to establish that Miller disregarded the risk by failing to take reasonable measures. Miller reviewed all the investigations

7

performed and confirmed that, where actual issues were found, the prison was repairing or had repaired the condition. Ford did not offer evidence to dispute that the prison examined the cell conditions once he filed his grievances. *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

## IV.     Denial of Access to the Courts

The Supreme Court has long recognized that prisoners have a right to meaningful access to the courts and that prison officials are barred from "actively interfering with inmates' attempts to prepare legal documents." *Lewis v. Casey*, 518 U.S. 343, 350 (1996).   "To state a claim for denial of access to the courts . . . a plaintiff must allege that the defendant took or was responsible for actions that hindered [the] plaintiff's efforts to pursue a legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quotation marks and citation omitted).

Ford failed to offer sufficient evidence to show that Officer Daniel McClenning threw away his legal papers.   Ford stated he packed his own bags when preparing to transfer to a new institution and he did not offer any evidence to contradict McClenning's statement that he was not present when Ford packed his belongings, that he had no other contact with Ford's property, and that prison workers were responsible for loading the transport van.   Even assuming that McClenning ordered Ford to sign an additional form, it does not show that McClenning had any other contact with Ford's property.   Because Ford did not establish that McClenning had any involvement in the disappearance of his legal papers, the district court properly determined that the defendants were entitled to summary judgment on this claim.   To the extent that Ford also asserts a First

8

Amendment retaliation claim against McClenning for the same acts, that claim also fails because Ford did not establish that McClenning took any adverse act against him. *See Espinal*, 558 F.3d at 128.

We have reviewed the remainder of Ford's arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court